BARNES v. MAYS, administrator.

1. A person wishing to purchase land at administrator's sale commits a fraud by hiring another not to bid against him. On discovery of the fraud after the sale has been consummated, the purchase money paid and a conveyance executed, the sale will be set aside at the instance of the administrator.
2. To show that the fraud was injurious to the estate, evidence of the amount which the suppressed competitor intended to bid is admissible.

January 18, 1892.

Administrator's sale. Fraud. Evidence. Before Judge WELLBORN. Hall superior court. July term, 1891.

The suit was by Mays, administrator, against Barnes, alleging that the plaintiff put up certain land at administrator's sale, and Barnes, Pierce and others colluded to cheat and defraud him, and did so; that Barnes and others found that Pierce had come to the sale with the intention of bidding for the land, with the money to pay for it, if he could purchase it for $1,000 or $1,200; that Barnes, knowing the intention of Pierce to bid, went to Pierce and paid him $125 not to bid, in order that Barnes might purchase the land for little or nothing, and that Barnes was thus enabled to bid off and purchase the land for the greatly inadequate price of $600, when it was worth from $1,200 to $1,500 and would have brought that at the sale, had it not been for the fraudulent collusions mentioned, Pierce refraining

from and refusing to bid, etc.; that plaintiff, as soon as he learned of the fraudulent collusions, tendered to Barnes the $600 with interest, which Barnes refused to take. Petitioner prayed that the deed which he made as administrator, conveying the property, be cancelled, and the land resold.

The jury found that the sale was void, that it be set aside and the deed cancelled, and that plaintiff pay to defendant the $600 with interest, etc. Defendant's motion for a new trial was overruled, and he excepted. His motion contained the general grounds that the verdict was contrary to law, evidence, etc., and alleged that the court erred in admitting in evidence the following statement made by Pierce: "I went there for the purpose of bidding for the land. I had studied some time about buying the land as I wanted it for my own benefit and was willing to pay a fair price for it. Intended to bid a thousand dollars for it." This evidence was objected to, because it was the expression of a secret, unrevealed purpose, which could not now be accepted as evidence of what would have resulted if no contract to buy him off had been made; and because it was no evidence as to what he would have bid, or that he would have bid at all.

The court charged: " I think it is against public policy to retire any bidder from competing or bidding at an administrator's sale, by paying him or promising to pay him money to retire, and this would be especially true if it resulted in the property selling for less than it would otherwise have brought." It was alleged that the error in this charge consisted in holding that to influence a single bidder suppressed bidding or prevented just competition at a public sale, especially as an administrator had the right to withdraw the property from sale and it was his duty to do so, if he believed that it was not bringing its value.

J. B. ESTES and G. H. PRIOR, for plaintiff in error.

R. H. BAKER and H. H. DEAN, *contra.*

BLECKLEY, Chief Justice.

1. This seems as plain a case as could be presented to a court. The general morality of the law is higher than many good people suppose; is very much higher in the matter of guarding public sales of property against collusive combinations to suppress bidding. The standard it has in view is not merely conscience, but enlightened conscience. It condemns not only what the average man would regard as fraudulent, but what he ought to regard as contravening a sound public policy. No doubt many well-meaning persons, in their pursuit of gain, violate the law in this respect without being aware that their conduct is in the least reprehensible. They are not without conscience, but without sufficient light; the law is better than they take it to be. In the present case the defendant below, Mr. Barnes, deliberately hired Mr. Pierce, whom he knew was likely to be a competing bidder, not to bid against him. The result was that he purchased the land for six hundred dollars when, but for this collusion, it would have brought much more. Mr. Pierce would have bid for it a thousand dollars. The sale was consummated, the purchase money received and the conveyance made, before the administrator discovered the fraud which had been perpetrated by the purchaser. This fraud vitiated the sale and afforded a ground for rescission at the election of the administrator. After tendering or offering to pay back the purchase money, he brought the present suit to enforce this right. There can be no doubt that the law is with him. Very many authorities on the general question are cited in Greenhood on Public Policy, 183 *et seq.* That the prohibition against buying off competition applies to sales by administrators is manifest, and this court has so ruled. *Graham* v. *Theis,* 47 *Ga.* 479.

2. Evidence that Pierce intended to bid one thousand dollars, was admissible to show that in point of fact the fraud was injurious to the estate which the administrator represented. To render this evidence admissible, it was not necessary that Barnes should know how much Pierce intended to bid; it was enough that he knew that Pierce intended to bid something. Perhaps not even this much knowledge was requisite; for when one hires another not to bid at a contemplated sale which the law requires to be made at public outcry, the two persons thus contracting are conspirators, and the ignorance of one of what the other actually intends is of little consequence.      *Judgment affirmed.*