## WILLBANKS *v.* UNTRINER.

1. The overruling of a demurrer to a declaration, even if erroneous, is not a proper ground for a motion for a new trial. If no exception *pendente lite* to an error of this kind is filed, it must be excepted to directly in the bill of exceptions. An exception taken in the manner last mentioned cannot, however, be considered by this court unless made within the time prescribed by law.

2. One of the questions at issue being whether or not a levy on certain realty was excessive, it was error to charge that the officer could have levied upon an undivided one half, one third, one eighth or one tenth therein, or that he could have levied upon the entire property and sold an undivided interest in the same. When realty is capable of subdivision, and a given portion of it sufficient in value to satisfy the execution can be cut off and sold separately without injury to the balance of the property, it is the duty of the levying officer to pursue this course; but he cannot, when the defendant in execution owns the entire fee, sell an undivided interest, and thus make the purchaser at his sale a tenant in common with the defendant in execution.

3. There being in the record no copy of any homestead proceedings, it is impossible to determine whether or not the plaintiff's alleged homestead was in the first instance lawfully set apart.

4. If it was, the mere fact that she left this State would not defeat the homestead. If she left *animo revertendi* and with no intention of abandoning her domicile in Georgia, the homestead would remain valid; if she left with no intention of returning, it would be otherwise. In each instance, the question of intention should control.

5. If a sheriff's sale was in other respects lawful, the mere fact that he gave a bidder to whom the property had been knocked

98 801
d107 392
98 801
112 494
98 801
114 613
98 801
115 775
98 801
116 590
98 801
130 412

off time within which to raise the money to pay for the property would not render it a credit sale. The bidder was liable as soon as his bid was accepted, and the sheriff's responsibility for the purchase money immediately began. The matter of indulgence was between these two, and in no way affected the rights of other persons interested.

6. Where an entry of "no personalty to be found" has been duly made upon a justice's court execution before it is levied upon land, a sale of the land thereunder is not rendered invalid because, as matter of fact, the defendant in execution at the time of the levy actually owned personalty sufficient in value to satisfy the execution.

August 18, 1896.

Equitable petition. Before Judge Kimsey. Habersham superior court. September term, 1895.

On July 15, August 19, and November 18, 1891, judgments were rendered against Mrs. Untriner in favor of the Gibbs Drug Co., Mauck and Edwards, for the principal sums of $36.50, $38.56, and $38.35, besides interest and costs on each. On May 27 and June 1, 1895, the executions issued from these judgments were levied by a constable on a house and lot in Toccoa, the constable having previously made an entry on each execution, of "search made and no personal property found on which to levy this *fi. fa.*" The property was exposed for sale on July 2, 1895, by the sheriff, and knocked off for $180 to Willbanks as the highest bidder. On the next day Mrs. Untriner brought her petition against Willbanks and the sheriff, praying for decree setting aside the sale as null and void, and for injunction and general relief. Answers were made by the defendants; and on final trial the jury, in answer to specific questions submitted by the court, found in favor of the plaintiff. A motion for new trial was made and overruled.

The petition alleges, that on July 30, 1891, plaintiff had the house and lot (being improved lot 110x125 feet, on which is situated a boarding-house) set apart as a homestead for herself and her four minor children, naming them; that the Gibbs Drug Co., Mauck and Edwards appeared in the

list of creditors attached to the declaration; that the con-
tracts on which the judgments in their favor were rendered
did not waive homestead, nor do the *fi. fas.* show any such
waiver, nor was there any affidavit filed as required by the
code; that when the executions were filed with the sheriff,
claim was interposed under the homestead in terms of the
law, and filed by the sheriff in the clerk's office, but he pro-
ceeded to sell the property although said claim was in his
hands; and that the levy was excessive, the total amount
of the executions being only about $126, and the property
being worth $1,000 and subject to division, and a part of it
being amply sufficient to pay off and discharge the *fi. fas.*
In the answer of Willbanks he says, it is doubtless true
that plaintiff attempted to homestead as alleged, but the
homestead was void, because she was a married woman liv-
ing with her husband, and claimed the property as her own,
and because she did not own the house and lot at that time;
and that soon after obtaining the homestead in 1891, she
and her family removed to Alabama, and have not been
residents of Georgia for several years, and are not now;
and that defendant bought the property without notice of
any irregularity, and the purchase was *bona fide* and
honest.   The sheriff answered, that plaintiff stated to him
that she had taken the benefit of a homestead exemption,
and at the same time she stated that her home was in Ala-
bama; that he ratified the acts of the constable; and that
while a claim was put into his hands, he was advised by
eminent counsel that it was not legal, for which reason he
did not stop the sale.

There was testimony for the plaintiff, that the property
in question is well worth $1,000, and could be so divided as
to leave the house on one part of the lot, where it would
answer as well for the purposes of a boarding-house (it
being used as such) as it would on the entire lot, and the
vacant lot so cut off would be worth $250.   The house has
16 rooms, and the property is rented out by plaintiff for

$16 per month, this including the furniture in the house, which furniture is worth $125 to $150. She left Toccoa in .April, 1893, and has been since living in Alabama. Upon the question of change of residence, the evidence is somewhat conflicting. She testified, that she never left Toccoa to stay; had always considered it her home; had rented the place out to send her children to school in Alabama; had always intended to return; never carried anything away with her but her clothing, but left every piece of furniture she had in the house, where it is now. While she was in Alabama her husband died there. She has there an organ, and certain live stock which she took on debts made there; has also 600 gallons of wine she made there; and she runs a boarding-house · and small store there. Plaintiff's attorney (who was also counsel for the sheriff) testified that on the 7th of June the constable who made the levies told him that he made the levies on two of the *fi. fas.* that day, and that the papers had not been in his hands before. This was several days after the property had been advertised. The sheriff stated to plaintiff that the property would not be sold, and at his request, witness carried the claim to the clerk's office and filed it. He filed but one claim. From the testimony of the sheriff and of Willbanks it appears, that Willbanks knew there was a claim filed when he bought the property. After it was knocked off to him he asked the sheriff if he could give him a few days to get up the money; and after consulting the attorney for plaintiffs in *fi. fa.*, the sheriff said he could. Willbanks went away, borrowed the money, and returned two days later, when he learned of the restraining order in the present case; on account of which he did not pay or tender the money, nor was any deed made by the sheriff.

The motion for new trial contains the following grounds:

1. Error in not sustaining a demurrer to the petition.

2. Error in charging the jury: "On question of excessive levy, I charge you that, instead of levying on the entire

property, an undivided interest could have been levied on. If you find that the executions for $126 were levied on property worth $800 or $1,000, you would be authorized to find the levy excessive, as the officer could have levied on a one half, one third, one eighth or one tenth interest, or he could have levied on the entire property and sold an undivided interest as above."

3. Error in charging: "Did plaintiff abandon her homestead? If this lady had removed from this State, intending to change her domicile to another State (and her intention is a matter for you), she would have abandoned the homestead. The thing for you to arrive at is, what was the intention of the plaintiff?"

4. The court remarked, during the discussion of this homestead question before the jury, that a party could reside out of the State for ten years if he did not intend to abandon his homestead, and the intention is one for the jury; and if homesteadant did remove from the State, intending to change her domicile, then that would be abandonment of homestead.

5. Error in charging: "Did the defendant pay or tender the money on sale day? I charge you that unless the money was paid or tendered on sale day, he would not be a *bona fide* purchaser. If it was agreed by the sheriff and plaintiffs in *fi. fa.* that the purchaser could go and get the money and bring it back, the sale would be a credit sale and void."

6. Verdict contrary to law and evidence, etc.

*Jones & Bowden* and *C. L. Bass*, for plaintiff in error.. *G. P. Erwin, J. C. Edwards* and *J. B. Estes*, contra.

LUMPKIN, Justice.

The nature of this case will be gathered from the official report.

1. Upon the question that the overruling of a demurrer to a declaration is not a proper ground of a motion for a

new trial, see: *Griffin* v. *The Justices*, 17 *Ga.* 96; *De Barry-Baya Merchants' Line* v. *Austin*, 76 *Ga.* 306; *Rogers, adm'r,* v. *Rogers et al.,* 78 *Ga.* 688; *Nicholls et al.* v. *Popwell*, 80 *Ga.* 604. The same thing is true as to a demurrer to an indictment: *Flemister* v. *The State*, 81 *Ga.* 768; *Robson* v. *The State*, 83 *Ga.* 166. These are only instances of the many decisions of this court relating to this matter, and the legal profession should, by this time, understand that the overruling of a demurrer to a declaration is matter for direct exception. It seems that the counsel for the plaintiff in error in the present case did so understand, because they not only made the overruling of their demurrer to the declaration filed by the plaintiff below a ground of their motion for a new trial, but they also excepted directly to this action of the court in their bill of exceptions. In this, however, they were too late, because the bill of exceptions was not filed within the time allowed them by law for excepting to rulings made at the trial.

2. The rule is well settled that whenever land is capable of subdivision, and a given portion of it of sufficient value to satisfy an execution can be levied on and sold separately without injury to the balance of the property, it is the duty of the sheriff or other levying officer to pursue this course. But there is no law which makes it incumbent upon the officer to levy upon and sell a fractional undivided interest in realty, the entire title to which is in the defendant in execution. The officer cannot, in this way, make the latter and the purchaser at the judicial sale tenants in common.

3. Whether or not the plaintiff's alleged homestead was lawfully set apart to her seems to have been one of the questions involved in this case; but we cannot pass upon it, for the reason that the record before us contains no copy of any homestead proceedings. While a married woman living with her husband is not, under the present constitution, entitled, as the head of a family, to have a homestead

set apart to her out of her separate estate, she may be allowed a homestead out of the same as a person having the care and support of dependent females, if in her case this ground for the allowance of a homestead exists.  *Johnson* v. *Little*, 90 *Ga.* 781.  Whether the question here indicated arose at the trial of the present action we are, however, unable to say, for the reason above stated.

4. Upon the assumption that the homestead was valid, the mere fact that the party at whose instance it was set apart left this State would not defeat it.  An entire abandonment of her domicile in Georgia would.  In this case, as in all others where the person suing out the homestead has left this State, the continuing validity of the homestead depends upon the question of domicile; and in determining that question, it should be ascertained whether the residence beyond the limits of this State was intended to be permanent or only temporary.

5, 6. The correctness of the propositions laid down in the last two head-notes is, we think, sufficiently manifest without elaboration.          *Judgment reversed.*