21506. DORSEY v. NORTH AMERICAN LIFE
INSURANCE COMPANY *et al.*

ARGUED JANUARY 9, 1962—DECIDED FEBRUARY 8, 1962—
REHEARING DENIED FEBRUARY 20, 1962.

*Frank C. Vann,* for plaintiff in error.

*Buchanan, Edenfield & Sizemore, Wm. H. Major, Short & Slocumb, Geo. A. Horkan, Jr., Gardner & Gardner, B. C. Gardner, Jr.,* contra.

ALMAND, Justice. The judgment under review is one confirming a sale of real estate by the grantee in a security deed under a power of sale and distributing the excess funds received from the sale.

Under a deed executed by F. W. Dorsey to secure a debt held by the North American Life Insurance Company (hereinafter referred to as Insurance Company), written notice was given to Dorsey that, by reason of default in the payment of the note, the Insurance Company, under the power contained in the deed, would sell at public sale on the first Tuesday in June, 1961, to the highest and best bidder for cash the tract of land described in the deed. The notice also contained the information as to the amount of the principal and interest. Dorsey would also be required to pay 15% of the principal and interest as attorney's fees as provided for in the note and security deed. Notice of the sale under the power was duly advertised. On the day of the sale, and before any bids were received, it was announced by the attorneys for the Insurance Company that it would be about two weeks before a deed to the purchaser would be delivered. At the public sale one Jack F. Gay's bid of $10,000 was the highest and best bid. In a written agreement between Gay and the Insurance Company he paid $1,500 to the Moultrie Banking Company in escrow for the use of the Insurance Company, and agreed to pay the balance of $8,500 on or before July 7, 1961, (later changed to August 8), when the deed to the property was

to be executed by the Insurance Company and turned over to the bank for delivery to Gay. Should Gay default in the payment he would forfeit the $1,500.

On June 6, 1961, the day of the sale, Dorsey entered into a written agreement with the Insurance Company, which recited that one Mrs. O. J. Johnson held a second security deed covering the land contained in the Insurance Company's security deed and that in event of any excess funds being received at the sale the Insurance Company was authorized to pay them to Mrs. Johnson. Subsequently, a deed was executed to Gay who paid $10,000 to the attorneys for the Insurance Company, who, after crediting Dorsey with payment of the principal, interest, costs, and attorney's fees, had in their hands excess funds in the sum of $2,751.09. On August 3, 1961, the attorneys for the Insurance Company filed a petition in Colquitt Superior Court alleging that a creditor of Dorsey had caused a summons of garnishment to be served on them, and that they had reason to believe there were other creditors of Dorsey claiming a right to participate in the distribution of the excess funds in their hands.

They sought to pay the excess funds into the court, and for an order requiring the claimants to these funds to intervene and assert their claims. After a hearing the court confirmed the sale and overruled the objection of Dorsey to the retention by Gardner & Gardner of $941.50 as attorney's fees. The excess funds were ordered to be paid to Mrs. O. J. Johnson.

■ F. W. Dorsey filed general and special demurrers to the petition, and error is assigned on the order overruling them. We have examined these and find they are without merit.

■ Error is assigned on the court's overruling objections to the admission of oral and documentary evidence on the hearing. These objections being without merit or substance we see no need to enumerate them. The court did not err in overruling those objections.

■ The main contention of Dorsey is that the sale to Gay was not a cash sale as required by the power of sale in the security deed, by the notice to Dorsey, and by the advertisement of sale, but was one for credit. It is asserted that under *Code Ann.* § 37-607, powers of sale in deeds "shall be strictly con-

strued and shall be fairly exercised," and the failure to sell the property for cash rendered the sale void.

The evidence in this case does not demand such a finding as a matter of law. *Code Ann.* § 37-611 provides that sales of real estate under power in deeds shall be advertised and conducted in the usual manner of sheriff's sale in the county in which such real estate, or a part thereof, is located. In *Willbanks v. Untriner*, 98 Ga. 801 (5) (25 SE 841), this Court held: "If a sheriff's sale was in other respects lawful, the mere fact that he gave a bidder to whom the property had been knocked off time within which to raise the money to pay for the property would not render it a credit sale. The bidder was liable as soon as his bid was accepted, and the sheriff's responsibility for the purchase money immediately began. The matter of indulgence was between these two, and in no way affected the rights of other persons interested." In *Adcock v. Berry*, 194 Ga. 243 (1) (21 SE2d 605), in a case involving the sale under a power contained in a security deed it was held: "Where under a power of sale in a security deed the grantee in case of default was authorized, on compliance with certain conditions, to sell the land described in the deed to the highest bidder 'for cash,' and the sale was duly advertised and auctioned on that basis, the sale was not rendered invalid by a subsequent arrangement between such grantee and the highest bidder, not the result of any previous agreement or understanding, whereby a note of the latter was accepted in lieu of cash, but the grantee would be accountable for the note as cash in settling with the debtor."

The evidence in this case discloses that at the time of the sale the attorneys for the Insurance Company publicly stated that it would take about two weeks to obtain a deed for the purchaser, and there was some evidence that on the day of the sale the purchaser, Gay, was able and ready to pay the full amount, and when the deed was executed and ready for delivery, the full amount was paid. In these circumstances we are unable to see how Dorsey, the grantor of the power, was injured.

■ It is finally contended that the court erred in allowing attorney's fees in the amount claimed because on previous occa-

sions the attorneys for the Insurance Company had collected attorney's fees from Dorsey. The only evidence in this regard is that of one of the attorneys for the Insurance Company. He testified that on one or more occasions Dorsey, being in default, was notified of foreclosure proceedings and on one occasion he paid $300 to prevent the foreclosure proceedings from taking place This amount was credited on his indebtedness. J. D. Gardner, the attorney for the Insurance Company, recalled that on these occasions some attorney's fees were collected, the amounts he did not remember. Dorsey did not present any evidence as to any specific payments. Assuming that some attorney's fees were paid on proceedings prior to the exercise of the power of sale, they were matters of indulgence, forbearance, and benefits to Dorsey, and were not payments in total satisfaction of Dorsey's obligation to pay 15% as attorney's fees in event of a consummated foreclosure under the power of sale. The allowance of the attorney's fees claimed was not error.

The judgment complained of was not error for any reason assigned.

*Judgment affirmed. All the Justices concur.*