A92A0068, A92A0069. TOWER FINANCIAL SERVICES, INC. et al. v. SMITH et al.; and vice versa.

(423 SE2d 257)

ANDREWS, Judge.

In this appeal and cross-appeal, Tower Financial Services, Inc., appeals the denial of its motion for summary judgment and grant of plaintiffs' (the Smiths) motion on two counts of a six-count complaint. The Smiths appeal summary judgment to Tower on four other counts and limitation of recoverable damages on the counts where liability was determined in their favor by summary judgment.

The following facts are undisputed. On August 16, 1985, the Smiths borrowed $8,091.50 from Tower, using as collateral their property at 164 Moreland Avenue. The promissory note was secured by an August 16, 1985 deed to secure debt on that property which was recorded in DeKalb County Deed Book 5335, p. 290. That same day, the Smiths gave Tower a deed to secure debt on their residence located at 432 East Pharr Road, recorded at DeKalb County Deed Book 5282, p. 18 as additional security.

On August 21, 1986, the Smiths borrowed $46,000 from Tower, executing a promissory note and a deed to secure debt on both the Moreland Avenue and East Pharr Road properties, which was recorded in DeKalb County Deed Book 5566, p. 95.

In October 1986, the Smiths defaulted on both loans. A Chapter 13 bankruptcy petition was filed in December 1986. The stay was lifted in order to allow foreclosure. In July 1987, Tower retained attorney Weber, third-party defendant, to foreclose on the secured properties. It was the intention of Weber and Tower to foreclose on the deed to secure the $46,000 debt, recorded at Deed Book 5566, p. 95 and listing both the Moreland Avenue and East Pharr Road properties. Instead, due to a clerical error in Weber's office, the required foreclosure notice and advertisement referred to the first deed given to secure the $8,091.50 loan listing only the Moreland Avenue property and recorded in Deed Book 5335, p. 290. On August 4, 1987, Weber conducted the foreclosure on the DeKalb County courthouse steps and cried out a bid on behalf of Tower of $65,728.94. There were no other bids. The bid, as calculated by Tower and Weber, represented the payoff amount of $59,486.13 for both of the outstanding loans; ten percent attorney fees of $5,948.61; plus advertising charges, transfer tax, and recording fees totaling $294.

Tower executed a deed under power transferring 164 Moreland Avenue to itself and then sold that property on November 25, 1987 to a private purchaser for $20,000.

On August 6, 1987, Weber notified the Smiths that Tower had foreclosed on the East Pharr Road property and demanded possession of their home. A week later, Tower filed a dispossessory action against

them, alleging that it was entitled to possession because it had foreclosed on the East Pharr Road property and the Smiths were tenants at sufferance who had failed to make rental payments. On August 26, 1987, a pro se answer was filed stating that there was no rent involved in the situation and the Smiths were going to sell rental property and refinance their home, the East Pharr Road property. Tower obtained an order that, pending resolution, rent would be paid into the registry of the court. The Smiths paid the November 1987 rent into court, although the clerk incorrectly applied it to another dispossessory pending between the same parties. On December 8, a writ of possession was issued to Tower although it was vacated by court order of December 14, 1987, which acknowledged the clerical error in posting. Pursuant to the December 8 writ, Tower's agents entered the East Pharr Road residence in the Smiths' absence and removed all the furniture and personal belongings to the curb where they were left.

After vacation of the December 8 writ, Tower moved for summary judgment in the dispossessory proceeding. It was granted on January 28, 1988, on the basis of factual assertions by Tower that it had foreclosed on the East Pharr Road property on August 4, 1987. On May 31, 1988, Tower sold the East Pharr Road property for $62,000 to a private purchaser.

During preparations for this sale, Tower became aware of problems regarding the foreclosure on the East Pharr Road property. Karen Horner, Weber's associate, then conducted a foreclosure sale on July 5, 1988 under the deed to secure debt dated August 21, 1986, Deed Book 5566, p. 95, which listed both the Moreland Avenue and East Pharr Road properties. There being no other bids, Horner acquired the East Pharr Road property for Tower for a bid of $81,798.56, the payoff of $73,953.56 plus ten percent attorney fees and expenses. On July 7, 1988, Tower recorded its deed under power at DeKalb Deed Book 6178, p. 722. The Smiths' bankruptcy petition was dismissed in November 1988.

The present suit was filed by the Smiths on April 16, 1990, containing four counts. The first two sought to recover the alleged surplus due from the foreclosure of, respectively, 164 Moreland Avenue and the East Pharr Road properties, based on the difference between the amount owed and paid by bid for the two properties. Counts 3 and 4 sought punitive damages and attorney fees. Weber was joined by Tower as a third-party defendant. In addition, on June 18, 1990, Tower filed a counterclaim, alleging unjust enrichment and seeking "equitable reformation" of the foreclosure proceedings.

On September 10, 1990, the Smiths filed an extraordinary motion for new trial in the dispossessory action on the basis of newly discovered evidence that they were entitled to possession at the time of the

dispossession because Tower did not have title to the property through foreclosure, an intrinsic defect which did not appear on the face of the record. The motion was denied by the dispossessory court on January 15, 1991. As far as the record before us indicates, no appeal was taken from either the original issuance of the writ of possession or the denial of the motion for extraordinary new trial.

On September 25, 1990, the pretrial order was entered in the present case. On December 17, 1990, the Smiths filed an amendment to their complaint, adding as Count 5 a claim for wrongful dispossession. They also filed a motion for partial summary judgment as to the liability of Tower and Weber for surplus from the sales. On February 1, 1991, another amendment was filed adding Count 6, seeking recovery of the fair market value of the East Pharr Road house ($66,500) plus interest. On December 12, 1990, Tower and Weber moved for summary judgment and filed a supplemental brief in support on February 13, 1991, in which it was pointed out that no order amending the pretrial order to allow the addition of Counts 5 and 6 had been entered and objecting to consideration of these claims.

The court granted the Smiths' motion for partial summary judgment on Count 1, finding they were entitled to the surplus from the sale, finding that the legal description and the recorded deed to secure debt advertised referred only to the first deed to secure debt ($8,091.50) on the Moreland Avenue property "although Tower Financial intended to foreclose on both deeds to secure debt and against both properties."[1] The court allowed the following costs: foreclosure costs were advertising $208; transfer tax $65.70; recording fee $20.50; and 10 percent attorney fees of the loan amount actually foreclosed on of $801.15, not the $5,948.61 claimed. Total charges against the bid price of $65,728.94 were $9,194.85, leaving a surplus of $51,394.63 to be applied against the indebtedness which was $46,000 plus interest totalling $5,394.63, or a payoff of the two loans of all debt, interest, costs and lawful attorney fees of $60,581.48. Because Tower and Weber took $5,948.61 attorney fees improperly, this left a surplus of $5,147.40 due the Smiths on the Moreland Avenue transaction.

The court further found that, without providential cause or excusable neglect, Tower did not foreclose against the Pharr Road property and obtain title to it but did extinguish all indebtedness on it and owe the Smiths the $5,147.70 surplus. In addition, Tower and Weber then went through a foreclosure on the Pharr Road property in 1988 when Tower had no legal right to do so, having earlier satis-

---

[1] There is no dispute between the parties that the intent of Tower and Weber was to foreclose only under the later deed which secured the $46,000 debt, listing both Moreland Avenue and Pharr Road, not the earlier $8,091 deed listing only Moreland Avenue.

fied the entire indebtedness, although in error. The Smiths were not entitled to the bid price of $81,798.86, but, instead, on Count 2, to the fair market value of the Pharr Road property free and clear of the $46,000 note reflected at Deed Book 6178, p. 722. (The 1988 Deed Under Power of Sale.) The court found liability, leaving the fair market valuation for the jury. The court granted Tower and Weber summary judgment on Counts 3 and 4, punitive damages and attorney fees.

Having concluded that the fair market value was the proper measure of damages on Count 2, the court did not further address Count 6.

On Count 5, wrongful dispossession, the court found this claim barred by res judicata, collateral estoppel and estoppel by judgment because Tower ultimately prevailed in the dispossessory proceedings because the Smiths were found in default in those proceedings. Those issues, therefore, could not be relitigated as long as that judgment had not been set aside pursuant to OCGA § 9-11-60 which was unavailable since three years had elapsed from the judgment of possession.

In Case No. A92A0068, Tower and Weber contend the trial court erred in denying their motion for summary judgment because 1) undisputed facts show there was no surplus because Tower simply paid itself in a "paper transaction" for each piece of property; 2) the $46,000 loan was not extinguished by the first foreclosure on the Moreland Avenue deed to secure debt; and 3) the trial court erred in granting partial summary judgment to the Smiths allowing them to recover the fair market value of the East Pharr Road property.

In Case No. A92A0069, the Smiths enumerate as error 1) the ruling that the measure of damages for wrongful foreclosure is the fair market value of the real property, not the surplus from the sale; 2) the failure to award prejudgment interest on both the sum of $5,147.40 awarded as money damages on the grant of partial summary judgment and the market value of the foreclosed realty; 3) the holding that recovery of punitive damages and attorney fees under OCGA § 13-6-11 was precluded as a matter of law; and 4) the ruling that res judicata, collateral estoppel and estoppel by judgment precluded their assertion of a wrongful eviction claim.

1. OCGA § 44-14-190 provides that money arising from the sale of mortgaged property is paid first to the person foreclosing or persons holding superior liens thereto and "when there is any surplus after paying off the mortgage and other liens, the surplus shall be paid to the mortgagor or his agent."

Tower and Weber contend there was no surplus because Tower simply paid itself for each piece of property and, while a "clerical error" resulted in the $65,728.94 bid which was higher than expected, a

surplus would exist only if Tower were enriched by the sale.

The two deeds under power prepared by Tower and recorded after the two foreclosures recite that cash was paid at each sale. Transfer taxes were therefore paid, as required by OCGA § 48-6-1. Tower instructed Weber as to the price to be bid on the first foreclosure sale and his associate, Horner, as to the amount to bid on the second.

If Tower lost money on the two sales, this was not demonstrated by any mathematical calculations contained in the record. The only evidence presented by Tower on this issue was the affidavit of Troughton, its senior vice president, which stated that the two bid amounts were "paper transactions" and "no money changed hands" and Tower did not receive any "surplus or any funds" from the property "through the foreclosure[s]." It further stated that "[t]he money Tower received from the sales of these properties was less than the amount owed to Tower by the Smiths. Tower suffered a net loss on the acquisition and resale of both the Moreland Avenue and Pharr Road tracts."

In contrast, however, the Smiths showed that the principal amount of the first loan was $8,091.50 with a 23.5 percent interest rate; Tower paid them $6,000 from the proceeds with the balance of $2,091.50 going to Tower for discount points and other fees; that Tower received payments totalling $2,582.44 from the Smiths and $20,000 from the sale of the property after foreclosure. The trial court determined Tower was due foreclosure costs consisting of 10 percent attorney fees and other costs and taxes totalling $1,103.35. Thus, Tower paid out a total of $8,299.85 for a profit of $14,282.59 on the first foreclosure. The second loan principal was $46,000 at an interest rate of 19.90 percent. Tower retained $7,295 as discount points and document preparation fees, paying the Smiths $38,705. The Smiths made payments of $1,989 and Tower then sold the property after foreclosure for $62,000. There was a profit on the second foreclosure of $32,579.

Tower made total profit of $46,861.59 on loans totalling $54,000.

"Powers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised." OCGA § 23-2-114. OCGA § 44-14-162 provides that sales of real estate under power in deeds shall be advertised and conducted in the usual manner of sheriff's sales in the county in which such real estate is located. "If a sheriff's sale was in other respects lawful, the mere fact that he gave a bidder to whom the property had been knocked off time within which to raise the money to pay for the property would not render it a credit sale. *The bidder was liable as soon as his bid was accepted, and the sheriff's responsibility for the purchase money immediately began.* The matter of indulgence was between these two, and in no way affected the rights of other persons interested." (Emphasis sup-

plied.) *Willbanks v. Untriner*, 98 Ga. 801 (5), 802 (25 SE 841) (1896).

Moreover, "[w]hereunder a power of sale in a security deed the grantee in case of default was authorized, on compliance with certain conditions, to sell the land described in the deed to the highest bidder, 'for cash,' and the sale was duly advertised and auctioned on that basis, the sale was not rendered invalid by a subsequent arrangement between such grantee and the highest bidder, not the result of any previous agreement or understanding, whereby a note of the latter was accepted in lieu of cash, *but the grantee would be accountable for the note as cash in settling with the debtor.* [Cits.]" (Emphasis supplied.) *Adcock v. Berry*, 194 Ga. 243 (1) (21 SE2d 605) (1942). *Dorsey v. North American Life &c.*, 217 Ga. 650, 653 (3) (123 SE2d 919) (1962); see *Champs-Elysses, Inc. v. Fulton Fed. &c. Assn.*, 247 Ga. 127, 129 (2) (274 SE2d 482) (1981).

Having placed themselves in this position, Tower and its lawyers are, as described by the trial judge, "the authors of their own misfortune." Now portraying the incidents as an otherwise undefined "paper transaction" does not detract from the facts as portrayed by the face of the documents involved.

The cases relied upon by Tower and Weber in their argument contesting the grant of summary judgment to the Smiths on Counts 1 and 2 do not involve the situation present here, where the first foreclosure bid has satisfied the debt on a second loan. *Palmer v. Mitchell County Fed. &c.*, 189 Ga. App. 646 (377 SE2d 4) (1988), is inapposite since it involved entitlement to insurance proceeds as to which there was specific language in the mortgage. *Vaughn & Co. v. Saul*, 143 Ga. App. 74, 77 (237 SE2d 622) (1977), held that where there are separate notes secured by different parcels of realty and a first foreclosure does *not* satisfy all the indebtedness, foreclosure on one parcel does not preclude foreclosure on the other.

There was no error in the denial of summary judgment to Tower and Weber and the grant of partial summary judgment to the Smiths on these claims.

2. The Smiths first enumerate as error the court's conclusion that the measure of damages for wrongful foreclosure is the fair market value of the property foreclosed upon instead of the "surplus" which they argue would have to be the full $81,798.86 bid at the foreclosure on the Pharr Road property.

The Smiths rely solely upon *Holland v. Sterling*, 214 Ga. 583 (105 SE2d 894) (1958). That case dealt with the issue of whether an attorney retained to conduct foreclosure for Central Builders Supply, assignee of the grantee bank in a deed to secure debt executed by Sterling, could file a petition for interpleader. The deed from Sterling to the bank provided that, after the principal, interest and other amounts due were paid, the grantee "shall pay any overplus to the

grantor, or to the heirs or assigns of grantor. . . ." In upholding the grant of demurrer and finding that the attorney could not bring an interpleader action, the Supreme Court stated that "the assignee was legally bound under the terms of the contract to pay this overplus to [Sterling], in the absence of proper proceedings by one or more of the alleged claimants to the fund to prevent such payment." Id. at 585.

In *Stone v. Davis*, 242 Ga. 17 (247 SE2d 756) (1978), a similar provision was relied upon in an attempt to defeat interpleader. The court there found that after the 1966 enactment of the Civil Practice Act, OCGA § 9-11-22 broadened and liberalized the interpleader remedy and allowed such an action by the holder of surplus funds after foreclosure. Further, the court held that "[t]he language in *Holland* [supra] to the effect that a party foreclosing on a security deed is bound by a clause in the deed requiring that any surplus funds be paid to the grantor 'in the absence of proper proceedings by one or more of the alleged claimants to the fund to prevent such payment,' is disapproved." The court pointed out that to require such payment as a matter of law could allow for fraud against creditors.

Therefore, that case is not authority for the conclusion argued by the Smiths that the measure of damages for wrongful foreclosure is the bid price.

"There exists a statutory duty upon a mortgagee to exercise fairly and in good faith the power of sale in a deed to secure debt. OCGA § 23-2-114. Although arising from a contractual right, breach of this duty is a tort compensable at law. See, e.g., *Curl v. First Federal Savings & Loan Assn.*, 243 Ga. 842, 843-844 (2) (257 SE2d 264) (1979) (affirmed the award of damages for mental pain and aggravation and punitive damages in an action for wrongful foreclosure); *Decatur Investments Co. v. McWilliams*, 162 Ga. App. 181, 182 (2) (290 SE2d 526) (1982) (affirmed an award of punitive damages in a wrongful foreclosure action); . . ." *Clark v. West*, 196 Ga. App. 456, 457 (395 SE2d 884) (1990).

In such a tort, recovery of damages is allowed to the holder of the equity of redemption. *Kennedy v. Gwinnett Comm. Bank*, 155 Ga. App. 327, 328-329 (1) (270 SE2d 867) (1980); see *Curl*, supra at 843 (2).

There was no error. At the time of the 1987 dispossession, there had been no foreclosure on the East Pharr Road property. In 1988, when Tower attempted to foreclose, the indebtedness secured by the deed to secure debt had been paid by the proceeds of the Moreland Avenue foreclosure and was, therefore, no longer in default.

" 'A security deed is automatically released and satisfied by full payment of the secured indebtedness, and title passes by operation of law back to the grantor or to those claiming under him. The title which thus revests upon payment is in no way affected by liens, en-

cumbrances, or rights which would otherwise attach by virtue of title having been vested in the grantee.' [Cits.] This statement tracks [OCGA § 44-14-60] which provides that such deeds pass title to the grantee only 'until the debt or debts which said conveyance was made to secure shall be fully paid.'" *Commercial Bank v. Stafford,* 149 Ga. App. 736, 737 (256 SE2d 69) (1979). " 'Payment in full of the debt renders the trust deed functus officio, and ipso facto extinguishes the power of sale.'" *Thurman v. Lee,* 181 Ga. 408, 410 (1) (182 SE 609) (1935).

Because Tower sold the property to a good faith purchaser who had no knowledge that the foreclosure sale was invalid, the Smiths could not redeem their equity. OCGA § 23-1-20; *Mathis v. Blanks,* 212 Ga. 226 (2) (91 SE2d 509) (1956). "[W]here the debt has been paid and the record does not indicate payment, a purchaser without notice would acquire title." *Burgess v. Simmons,* 207 Ga. 291, 297 (2) (61 SE2d 410) (1950).

3. The Smiths further contend that the court should have granted summary judgment as to the market value of the East Pharr Road property based on the valuation of that property submitted by Tower to the bankruptcy court in the Smiths' case there.

" 'As a general rule the price brought at a public sale, after proper and lawful advertisement, is prima facie the market value of the property sold, absent anything to indicate there was chilling of the bidding, fraud, or the like adversely affecting the sale.' [Cits.]" *Wachovia Mtg. Co. v. Moore,* 138 Ga. App. 101 (225 SE2d 460) (1976). However, "value on the date of sale is a factual question to be resolved by the trior of facts." *Thompson v. Maslia,* 127 Ga. App. 758, 764 (4) (195 SE2d 238) (1972). *Curl,* supra at 844 (2); see also *Wheeler v. Coastal Bank,* 182 Ga. App. 112 (1) (354 SE2d 694) (1987).

4. The Smiths argue that prejudgment interest should have been awarded on the market value of the property and the surplus awarded on the Moreland Avenue property.

OCGA § 7-4-15 provides that "[a]ll liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them. . . ." A liquidated debt is "an amount certain and fixed, either by the act and agreement of the parties or by operation of law; a sum which cannot be changed by the proof; it is so much or nothing. . . ." *Nisbet v. Lawson,* 1 Ga. 275, 287 (1846). The market value of the house was not such a liquidated amount. While the surplus calculated by the trial court might be accepted as a liquidated amount since there was no dispute about the amount bid at each foreclosure sale or the amounts owing on both notes, we find no reversible error in the court's refusal to do so.

Even where damages are not liquidated, prejudgment interest may be awarded by the jury under OCGA § 13-6-13 in tort or breach of contract actions, either separately or "not as such but as part of the damages." *Braner v. Southern Trust &c.*, 255 Ga. 117, 119 (1) (335 SE2d 547) (1985). Therefore, the Smiths may seek these damages at trial.

5. In their fourth enumeration, the Smiths contend the court erred in granting partial summary judgment to Tower and Weber on Count 3 of their complaint, punitive damages. The Smiths argue that the court's holding that there was a failure to show that Tower acted either intentionally or with such conscious indifference to consequences as to be constructively wanton was improper because no specific ground on this issue was contained in the motion for summary judgment and they were unable to address it.

Under OCGA § 9-11-56 (c), summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law. . . ." In ruling on a Rule 56 motion, the court is obliged to take into account the entire setting of the case. *Minor v. E. F. Hutton & Co.*, 200 Ga. App. 645, 646 (2) (409 SE2d 262) (1991). In the present case, doing so allows us to conclude the trial court was correct that, while there was evidence to support a finding that Tower and Weber conducted the foreclosure in a careless and negligent manner, there was inadequate evidence to support a punitive damage award. Id. The court was further correct in concluding that the motion for summary judgment as to all claims against Tower and Weber encompassed the punitive damages count.

" '[N]egligence, even gross negligence, is inadequate to support a punitive damage award.' *Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 118 (3b) (365 SE2d 827) (1988). Under OCGA § 51-12-5.1 (b), which is applicable . . . , it remains the rule that ' " '(s)omething more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage. . . . There is general agreement that, because it lacks this element, mere negligence is not enough. . . .' " ' " (Citations omitted.) *Ivey v. Golden Key Realty*, 200 Ga. App. 545 (1) (408 SE2d 811) (1991).

Here, construing the evidence of record most favorably for the Smiths, the acts committed by Tower and Weber were, at most, negligent breaches of the duties owed as grantee under the deeds to secure debt and the trial court correctly granted summary judgment as to their lack of liability for punitive damages. Id.

6. As to the court's grant of summary judgment to Tower and Weber on the issue of OCGA § 13-6-11 expenses of litigation, there was no error.

The court below denied them on the basis that the rights of the parties in the case were unclear and in fact presented issues of first impression. We agree.

The attorney fees claim made in Count 4 is premised solely upon causing the plaintiffs "unnecessary trouble and expense." " 'When bad faith is not an issue and the only asserted basis for a recovery of attorney fees is . . . the causing of unnecessary trouble and expense, there is not "any evidence" to support an award pursuant to OCGA § 13-6-11 . . . if a bona fide controversy . . . exists between the parties.' [Cits.] As a bona fide controversy did exist, the trial court did not err in awarding [summary judgment]." *Read v. Benedict*, 200 Ga. App. 4, 6 (1) (406 SE2d 488) (1991). See *Glen Restaurant v. West*, 173 Ga. App. 204, 205 (325 SE2d 781) (1984).

7. Finally, the Smiths argue that the court erred in finding their claim for wrongful dispossession in Count 5 barred by res judicata, collateral estoppel, and estoppel by judgment because Tower eventually prevailed by their default in the dispossessory action. The Smiths argue they had no such claim until December 14, 1987 when the eviction occurred, almost four months after their answer was filed in the dispossessory case.

We need not reach the merits of this argument, however, because Count 5 was added to the litigation December 17, 1990, three months after entry of the pretrial order in the case. Tower and Weber objected to this amendment and to consideration of it because of this. No leave of court or consent of the opposite parties was obtained.

"Under OCGA § 9-11-15 (a), 'once a pretrial order has been entered, a party may not amend without leave of court or consent of the opposite party . . . (and) "such order when entered controls the subsequent course of the action, unless modified at trial to prevent manifest injustice." ' *Gaul v. Kennedy*, 246 Ga. 290, 291 (1) (271 SE2d 196); OCGA § 9-11-16 (b)." *Ostroff v. Coyner*, 187 Ga. App. 109, 113 (2) (369 SE2d 298) (1988).

A decision right for any reason will not be set aside. *Dorminy v. Dorminy*, 242 Ga. 326 (249 SE2d 49) (1978).

*Judgment affirmed in Case Nos. A92A0068 and A92A0069. Birdsong, P. J., and Beasley, J., concur.*

DECIDED JULY 8, 1992 —
RECONSIDERATION DENIED JULY 21, 1992 —

*Freeman & Hawkins, T. Ryan Mock, Jr., Kevin W. Pendley, Spix, Krupp & Reece, Spencer J. Krupp*, for appellants.

*Robert P. Wilson, Gary C. Harris*, for appellees.