## A97A0227. LITTLE v. FLEET FINANCE et al.

### (481 SE2d 552)

ELDRIDGE, Judge.

This case arose as a result of plaintiff/appellant Victoria Little's entry of an unsuccessful bid at a non-judicial foreclosure sale for a piece of property on Old National Highway, the subsequent sale of the property to another, and a re-conducted foreclosure sale caused by appellant's objections to the original sale. Appellant challenges the trial court's granting of appellees' motion to dismiss her claim of fraud for failure to state a claim upon which relief can be granted.

As it relates to appellant's fraud claim, the record demonstrates that appellee Fleet Finance (Fleet) was the holder of a note and deed to secure debt for real property located at 5319 Old National Highway, College Park (property), which was owned by Mitchell Lampley, a former client of appellant. Lampley defaulted on the note. Fleet accelerated the debt and initiated foreclosure proceedings under the power of sale provisions in the mortgage contract. The foreclosure sale of the property was advertised for April 2, 1991, and the foreclosure advertisement stated that the property would be sold for cash to the highest bidder. The alleged outstanding indebtedness, including attorney fees and costs, was $85,925.11.

On April 2, 1991, appellees Phillip Hasty and John E. Tomlinson, acting as agents for Fleet through their employer, appellee John E. Tomlinson, P.C., commenced the foreclosure sale; just prior to the commencement of the sale, Fleet had informed potential bidders that a check would be accepted for the amount of the successful high bid. Fleet entered the first bid for the amount of the outstanding debt. Appellant was present and offered a bid of $85,925.12, one penny over the amount of indebtedness. John K. Adams, not a party to this action, was also present and entered into the bidding. Appellant and Adams each tendered several bids. Fleet accepted the highest bid, $135,000, from Adams, who wrote a check for the amount of the bid. Fleet agreed to hold the check until Adams finished obtaining the cash funds to cover the check. Adams had entered into negotiations with Fleet prior to the foreclosure sale wherein Fleet had agreed to finance the undetermined purchase price of the property, should Adams' bid be the highest and thus the successful bid at the sale.

On the same afternoon, appellant learned that although the foreclosure sale was "cash" only, Adams did not yet have sufficient cash funds to cover his $135,000 check. Appellant called Fleet's agents and had "numerous conversations" with them. In her complaint, appellant states that because she had "learned of the illegal agreement [between Adams and Fleet] . . . Fleet was withdrawing its offer to lend the purchase price to Adams."

Fleet re-advertised the property for public sale on the first Tues-

day in May; both appellant and Adams were given notice of the pending sale. On May 7, 1991, the property was sold at public outcry on the steps of the Fulton County Courthouse to the highest bidder. Neither appellant nor Adams was present, nor did they have bids tendered on their behalf.[1]

Appellant filed a complaint alleging: (1) breach of contract for failure to sell the property to her as next highest bidder; (2) fraud; and (3) violations of the Georgia Racketeer Influenced & Corrupt Organizations Act (RICO). Appellant sought actual damages of $264,074.88, which sum demonstrated the difference between her bid of $85,925.12 and $350,000, which was the alleged fair market value of the property, i.e., loss of profit.

Appellees separately filed motions to dismiss on the ground that appellant's complaint failed to state a claim upon which relief could be granted pursuant to OCGA § 9-11-12 (b) (6). The trial court issued an order finding that (1) appellant failed to allege a factual basis for a breach of contract claim because, under the law, the failure of the high bidder, Adams, to complete the terms of his bid did not permit Fleet to simply offer the property to appellant as the next highest bidder without adhering to statutory procedures;[2] (2) appellant's fraud claim failed because damages for loss of profit as alleged in the complaint were too remote and speculative to sustain such a claim; and (3) appellant failed to allege a factual basis for her claims of RICO violations. Thus, the trial court granted appellees' motion to dismiss for failure to state a claim.

Before this Court, appellant does not assign error to the trial court's determinations concerning her allegations of breach of contract and RICO violations. Appellant travels solely on her fraud theory. Appellant alleges that the trial court erred in "finding that this [foreclosure sale] was a lawful sale," and in determining that the damages alleged in the complaint were too speculative and uncertain to provide a basis for recovery.

In analyzing appellant's contentions, we note at the outset that "a motion to dismiss for failure to state a claim should be granted only where a complaint shows with certainty that the plaintiff would

---

[1] Adams filed suit against Fleet for failure to honor the loan agreement; this suit was eventually settled out of court in Adams' favor.

[2] This determination was correct. A non-judicial foreclosure sale must comply with the provisions of OCGA § 9-13-161, which authorizes public sales *only* between the hours of 10:00 a.m. and 4:00 p.m. on the first Tuesday of the month after proper notice is given through advertisement in the official newspaper of the county in which the property is located. OCGA § 44-14-162. Thus, upon the failure of a purchaser to comply with a high bid, a property sold at public auction may not be conveyed to the next highest bidder without complying with the terms of the statute. *Wachovia Mtg. Co. v. DeKalb County*, 241 Ga. 416 (246 SE2d 183) (1978); *Citizens Bank of Forsyth v. County of Lamar*, 187 Ga. 123, 126 (200 SE 257) (1938); *Humphrey v. McGill*, 59 Ga. 649 (1877).

not be entitled to relief under any state of facts that could be proven in support of the claim." (Citations and punctuation omitted.) *English v. Liberty Mtg. Corp.*, 205 Ga. App. 141 (421 SE2d 286) (1992). With this principle in mind, we turn to the allegations of the complaint and the trial court's order.

1. We find that the speculative nature of damages alleged in a complaint may not afford a basis for the granting of a motion to dismiss wherein the allegations of a complaint are taken as true, as opposed to a motion for summary judgment wherein the merits of a complaint are addressed.[3] Moreover, the trial court's granting of the motion to dismiss as to appellant's fraud claim, based on damages, ignored the issue of nominal damages which a jury might find upon the commission of an unlawful act. "[N]ominal damages are always allowed for any tortious invasion of a property right, though no actual damage results therefrom." *Williams v. Harris*, 207 Ga. 576, 579 (63 SE2d 386) (1951). Notwithstanding this determination and for the reasons that follow, this Court finds that the trial court properly granted appellees' motion to dismiss appellant's fraud claim pursuant to OCGA § 9-11-12 (b) (6).

In order to prevail on a claim of fraud, one must prove five essential elements: a false representation, scienter, inducement, reliance, and injury resulting from reliance on the false representation. See *Doe v. Prudential-Bache/A.G. Spanos &c.*, 222 Ga. App. 169 (474 SE2d 31) (1996). Further, fraud must be pled with particularity. OCGA § 9-11-9 (b). Here, even if the averments in appellant's complaint are considered as true for the purposes of a motion to dismiss, she has failed to demonstrate either that appellees made a false representation upon which she relied or that she was in any way injured by virtue of appellees' actions. See *Hardy v. Gordon*, 146 Ga. App. 656, 657 (247 SE2d 166) (1978).

Under the facts as asserted in the complaint, there was a "confidential agreement" between Adams and Fleet, made prior to the public sale of the property, wherein Fleet agreed to "extend credit," i.e., financing, to Adams for a then undetermined sum which would cover the amount of his bid, if he was the successful high bidder. Appellant contends that this confidential agreement made the sale of the property unlawful and thus fraudulent. However, appellant fails to allege how an agreement between Adams and Fleet could be considered a false representation made to *her* upon which she relied to her detriment so as to sustain a claim of fraud.

Moreover, such agreement, as alleged by appellant, was not

---

[3] Compare *Newkirk v. United Fed. Sav. &c. Assn.*, 165 Ga. App. 311 (299 SE2d 183) (1983).

fraudulent. A finance company which holds the security interest in a property is permitted to bid on and obtain the property at public auction. See *Bellamy v. Resolution Trust Corp.*, 266 Ga. 630 (469 SE2d 182) (1996); *Stepp v. Farm & Home Life Ins. Co.*, 222 Ga. App. 257 (474 SE2d 108) (1996); *Wheeler v. Coastal Bank*, 182 Ga. App. 112 (354 SE2d 694) (1987). Thus, there is nothing improper about the financing company's agreement with a third party to finance their bid. "[W]hen a power of sale is exercised, all that is required of the foreclosing party is to advertise and sell the property according to the terms of the instrument, and that the sale be conducted in good faith." (Citations and punctuation omitted.) *Kennedy v. Gwinnett Commercial Bank*, 155 Ga. App. 327, 330 (270 SE2d 867) (1980). Under the facts as put forth in appellant's complaint, Fleet's financing agreement with Adams for an undetermined sum reflecting the amount of Adams' bid, should he be the high bidder, presents no circumstance which would illustrate that the sale was conducted by Fleet other than in good faith and in accordance with the terms of the deed and all statutes; such sale was to the benefit of the debtor who was relieved of liability on the note when the property sold for the amount of the debt and expenses. *Kennedy*, supra at 333. Further, proceeds from a high bid that exceeds the amount of indebtedness, such as in the instant case, go to the debtor. OCGA § 44-14-190.

Appellant contends the fact that the agreement was made *prior* to the sale demonstrates the fraudulent nature of the agreement and subsequent sale. In support of this contention, appellant cites: "Where under a power of sale in a security deed the grantee in case of default was authorized, on compliance with certain conditions, to sell the land described in the deed to the highest bidder 'for cash,' and the sale was duly advertised and auctioned on that basis, the sale was not rendered invalid by a subsequent arrangement between such grantee and the highest bidder, *not the result of any previous agreement or understanding*, whereby a note of the latter was accepted in lieu of cash." (Emphasis supplied.) *Adcock v. Berry*, 194 Ga. 243 (1) (21 SE2d 605) (1942); see also *Dorsey v. North American Life Ins. Co.*, 217 Ga. 650, 653 (123 SE2d 919) (1962); *Willbanks v. Untriner*, 98 Ga. 801 (5) (25 SE 841) (1896).

To begin, we note that "[s]tatements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand are obiter dicta, and lack the force of an adjudication." (Citation and punctuation omitted.) *White v. State*, 213 Ga. App. 429, 430 (445 SE2d 309) (1994). More importantly, however, appellant failed to allege in her complaint any agreement or understanding between Adams and Fleet, prior to the sale, wherein Adams would obtain the property at an agreed upon price, and Fleet would accept a note for the agreed

upon amount in lieu of cash. This form of collusion which attempts to control either the bidding or the price of the realty is the type of "prior agreement or understanding" to which *Willbanks*, supra, made reference. *Kennedy*, supra at 328-332; see also *Giordano v. Stubbs*, 228 Ga. 75, 79 (184 SE2d 165) (1971) (irregularity accompanied by gross inadequacy of price authorizes set aside of sale); *Stepp*, supra (when fraudulent circumstances contribute to inadequacy of price, sale may be set aside); *Gordon v. South Central Farm Credit, ACA*, 213 Ga. App. 816 (446 SE2d 514) (1994) (sale may be set aside if accompanied by fraud contributing to the inadequacy of the price).

What is forbidden is a prior agreement or understanding that is in any manner *outcome determinative*, i.e., impacts on the amount of the highest bid or the identity of the successful bidder so as to chill either the bidding or the sale's price, a scenario which did not occur here where the bidding was driven above the debt, which circumstance benefited the debtor. Sound public policy supports the creation of foreclosure laws which protect the debtor, already in an attenuated position through the forced sale of his property, from a prior agreement or understanding which results in an unfair price for the property. *Kennedy*, supra. "The general morality of the law is higher than many good people suppose; is very much higher in the matter of guarding public sales of property against collusive combinations to suppress bidding. The standard it has in view is not merely conscience, but enlightened conscience." *Barnes v. Mays*, 88 Ga. 696, 698 (16 SE 67) (1892); see also OCGA § 44-14-161. In the case sub judice, the bidding was not suppressed, but was stimulated well above appellant's bid.

Next, appellant contends that the financing agreement between Adams and Fleet rendered the advertisement providing notice of the public sale of the property a fraudulent representation upon which she relied, since the advertisement stated that the sale was cash only, not credit. We disagree. The fact that Adams was to obtain the cash for the sale from financing, whether from Fleet or any other lending institution, did not render the sale of the property one for credit. If the financing had been completed, the resultant cash would have been tendered to cover the bid. Moreover, the fact that a high bidder is given time in which to raise the money to pay for the property does not render the sale one for credit, instead of cash. *Dorsey*, supra; *Adcock*, supra; *Willbanks*, supra; *Tower Financial Svcs. v. Smith*, 204 Ga. App. 910, 914 (423 SE2d 257) (1992). The bidder is liable as soon as the bid is accepted. "The matter of indulgence was between these two, and in no way affected the rights of other persons interested." (Citation and punctuation omitted.) Id. at 914. Appellant, also, could have availed herself of financing options. Appellant failed to allege in her complaint how obtaining the cash sums to

cover the high bid through financing rendered the advertisement and subsequent sale fraudulent.

Finally, under the facts as alleged in the complaint, appellant cannot show that she was injured by the "confidential agreement" about which she complains. By dint of appellant's efforts and pursuant to her request, Fleet rescinded its prior agreement with Adams, put the property back on the block, and although not required by law to do so, provided notice to appellant of the public re-sale of the property. In other words, appellant was returned to the status quo ante. Appellees' actions would have allowed appellant to bid on the property sans Adams, sans "confidential agreement," and thus sans alleged fraud. She chose not to attend the re-sale. This Court finds that appellant's choice, while perhaps a viable strategy in pursuing her claim for an alleged breach of contract, proved fatal to her fraud claim where there is no room for appellant to have her cake (her ability to bid on the property without the alleged fraudulent agreement) and eat it too (money damages, despite her ability to bid on the property without the alleged fraudulent agreement). See *Metter Banking Co. v. Millen Lumber & Supply Co.*, 191 Ga. App. 634, 638 (382 SE2d 624) (1989); see also *Couch v. Crane*, 142 Ga. 22, 26-28 (82 SE 459) (1914); *Corbitt v. Harris*, 182 Ga. App. 81, 82 (354 SE2d 637) (1987), overruled on other grounds, *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474) (1991).

In sum, under the facts as alleged in appellant's complaint: (1) the financing agreement between Fleet and Adams was lawful, did not make the sale one for credit, and did not impact on either the bidding, the ultimate price of the property, or the identity of the successful high bidder so as to chill the property's sale price; (2) Fleet's subsequent indulgence in allowing Adams additional time to cover his good faith bid was lawful and did not make the sale one for credit; and (3) pursuant to appellant's request, Fleet rescinded the disparaged "confidential agreement" with Adams, put the property up for public re-sale, and provided notice to appellant, thus returning appellant to the status quo. Appellant failed to allege in her complaint any act on the part of the appellees that demonstrated a false representation upon which appellant relied so as to sustain an action for fraud. Further, after the status quo was restored, appellant did not allege any injury connected with appellees' actions so as to sustain an action for fraud. Thus, it appears from the allegations of the complaint that appellant would not be entitled to relief on her claim of fraud under any fair reading of the facts alleged therein. See *Time Ins. Co. v. Fulton-DeKalb Hosp. Auth.*, 211 Ga. App. 34 (438 SE2d 149) (1993). Accordingly, the trial court did not err in granting appellees' motion to dismiss appellant's fraud claim pursuant to OCGA § 9-11-12 (b) (6). A trial court's judgment, right for any reason, will be

affirmed. *Grayer v. Hagler*, 181 Ga. App. 662 (353 SE2d 545) (1987).

2. Appellant also contends that the appellees' motion to dismiss for failure to state a claim was converted into a motion for summary judgment when the trial court improperly considered matters outside the record. There is no merit to this contention. It appears from the order of the trial court that judgment was rendered on the motion to dismiss based upon consideration of the complaint, alone. See *McGill v. Allis-Chalmers Credit Corp.*, 133 Ga. App. 700 (212 SE2d 27) (1975). The "matters outside the record" to which appellant refers addressed appellees' contention that appellant's claim was barred by the statute of limitation; this was a separate issue that was decided in appellant's favor.

3. Our holding in Division 1 renders moot appellant's contentions concerning her motion to strike matters not properly before the court.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 5, 1997.

*McDonald & Cody, Douglas W. McDonald, Sr., Douglas W. McDonald, Jr.*, for appellant.

*Johnson & Montgomery, Harry W. MacDougald, Timothy A. Baxter*, for appellees.