### A96A1587. H & H SUBS, INC. et al. v. LIM et al.
(478 SE2d 632)

RUFFIN, Judge.

This is the second time that this fraud action has been before this Court after a full trial.[1] Once again we are compelled to reversal.

In January or February 1990, Seung Ho and Helen Lim learned that H & H Subs, Inc. ("H & H Subs") was selling a Subway restaurant franchise in Fayetteville, Georgia. The Lims contacted Michael Hylton, Vice President and General Manager of H & H Subs, about

---

[1] See *H & H Subs v. Lim*, 213 Ga. App. 371 (444 SE2d 404) (1994).

purchasing the Fayetteville Subway. The parties discussed terms and arrived at a purchase price of $57,000, with $20,000 cash to be tendered as a downpayment. Hylton then presented the Lims with a draft purchase and sales contract, which they read and approved. On March 1, 1990, the Lims met Hylton at the Fayetteville Subway, reviewed the final purchase contract, signed it, and tendered the $20,000 downpayment.

The Lims subsequently received documentation from Subway headquarters in Connecticut indicating that the equipment in the Fayetteville store was leased, rather than included in the $57,000 purchase price. The final contract signed by the Lims specifically provided as follows: "Buyer agrees to assume the equipment lease." The Lims, however, deny that they ever agreed to this lease assumption provision, which appears in type different from the remainder of the contract. Implying that the contract was altered after execution, the Lims claim that the lease assumption provision was *not* in the agreement they reviewed and signed on March 1, 1990. Hylton and H & H Subs dispute this claim. According to Hylton, the Lims were aware of the lease before they signed the contract. Hylton further contends that he added the equipment lease provision to the contract after the draft was submitted to the Lims, but before its final execution on March 1, 1990.

On April 4, 1990, the Lims' attorney wrote Hylton and H & H Subs asserting that the Lims had not agreed to assume the equipment lease. The letter further indicated the Lims' desire to purchase the store and its equipment for $57,000 or, in the alternative, to rescind the contract and recover their $20,000 downpayment. In the absence of what they thought was an appropriate response, the Lims removed their inventory and vacated the Fayetteville Subway. H & H Subs then resumed business at the location.

The Lims brought suit against Michael Hylton and H & H Subs, primarily seeking refund of their $20,000 downpayment. The jury returned a verdict against both defendants for $20,000 in actual damages, plus prejudgment interest and attorney fees. Following a second phase of trial pursuant to OCGA § 51-12-5.1 (d) (2), the jury also imposed punitive damages against Hylton and H & H Subs in the amount of $20,000 each. On the defendants' motion, the trial court struck the jury's award of attorney fees and then entered the remainder of the verdict as a judgment. Hylton and H & H Subs now appeal.

1. Hylton and H & H Subs first argue that the trial court erred by denying them a directed verdict or judgment notwithstanding the verdict on the punitive damages claim. A trial court's refusal to direct a verdict or grant j.n.o.v. is reviewed under the "any evidence" standard. Viewing the evidence in the light most favorable to the jury's

verdict, this court will not disturb the verdict as long as there is any evidence to support it. *Willis v. Brassell*, 220 Ga. App. 348 (469 SE2d 733) (1996); *Stratton Indus. v. Northwest Ga. Bank*, 191 Ga. App. 683, 686 (1) (382 SE2d 721) (1989).

"Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). Punitive damages are authorized under this statute when fraud is established. *Rogers v. deMonteguin*, 193 Ga. App. 480, 483 (2) (388 SE2d 10) (1989).

Applying the "any evidence" standard, we conclude that the trial court's decision to submit the punitive damages issue to the jury and to approve the resulting verdict was not error. The Lims both testified that the lease assumption provision was not in the purchase agreement they read and signed on March 1, 1990. Seung Ho Lim further testified that Hylton represented at the March 1, 1990 meeting that the contract presented was the same as that previously submitted to the Lims for review and comment. Even Hylton admitted that he added the lease assumption provision, which is in different type, after the original contract proposal was drafted.

Reviewing the record in the light most favorable to the verdict, evidence existed to support the Lims' claim that Hylton added the "assumption of lease" provision *after* the contract was executed. We conclude, therefore, that the jury was authorized to find clear and convincing evidence of fraud in this case. The trial court did not err in denying defendants' request for directed verdict or j.n.o.v. on punitive damages.

2. Hylton and H & H Subs also argue that the trial court erred by not charging the jury on the definition of the "clear and convincing" evidence standard governing punitive damage awards. We agree.

Following the initial jury charges, counsel for H & H Subs objected because he did not believe the trial court had defined the "clear and convincing" standard. Although the trial court indicated that a defining instruction had been given, the transcript reveals no such charge. The trial judge properly instructed that evidence supporting punitive damages must be "clear and convincing." The charges, however, provided no further guidance on the "clear and convincing" standard.

In *Clarke v. Cotton*, 263 Ga. 861, 862 (440 SE2d 165) (1994), the Supreme Court determined that in cases involving two separate evidentiary standards, such as "clear and convincing" and "preponderance," the trial court must "define both standards to avoid misleading or confusing the jury." Even absent an appropriate request to

charge, the trial court must do more than simply instruct that different proof standards apply. *Clarke*, 263 Ga. at 862.

Neither Hylton nor H & H Subs submitted a proposed charge defining "clear and convincing" evidence. The need for a definition, however, was raised by counsel for H & H Subs. Pursuant to *Clarke*, the trial court is obligated to define both standards "even in the absence of a request to charge." Id.

Accordingly, the trial court erred in not providing the jury any guidance on the meaning of "clear and convincing" evidence. This error was not harmless. Although sufficient evidence was presented to submit the punitive damages question to the jury, that evidence was not overwhelming. Thus, the jury's verdict must be reversed. See *General Motors Corp. v. Moseley*, 213 Ga. App. 875, 887 (8) (d) (447 SE2d 302) (1994) (physical precedent only).

3. H & H Subs and Hylton further object to the award of prejudgment interest in this case. We agree that the jury's prejudgment interest award was improper.

The trial court instructed the jury that "in all cases where an amount ascertained would be the damages at the time of the breach it may be increased by the addition of legal interest from the time until the recovery." The language of this charge clearly was derived from OCGA § 13-6-13, which similarly provides that "[i]n all cases where an amount ascertained would be the damages at the time of the breach, it may be increased by the addition of legal interest from that time until the recovery."[2] Section 13-6-13 applies to contract actions. *Braner v. Southern Trust Ins. Co.*, 255 Ga. 117, 119 (1) (335 SE2d 547) (1985); *Stratton Indus.*, supra at 687 (indicating that only a verdict based on contract theory will authorize a prejudgment interest award under OCGA § 13-6-13).

This lawsuit, however, sounds in tort. In Georgia, "[a] purchaser claiming he was fraudulently induced to enter a sales contract has an election of remedies: (1) promptly after discovering the fraud he may rescind the contract *and sue in tort for recovery of the purchase price* and for any additional damages resulting from the alleged fraud; or (2) he may affirm the contract and sue for damages resulting from the fraud." (Emphasis supplied.) *Hightower v. Century 21 Farish Realty*, 214 Ga. App. 522, 523 (1) (448 SE2d 271) (1994); see also *Rivers v. BMW of North America*, 214 Ga. App. 880, 881 (1) (449 SE2d 337) (1994).

The record reveals that the Lims sought to rescind or cancel their contract with H & H Subs. Their attorney's April 4, 1990 letter

---

[2] The Lims do not argue, and the record does not indicate, that the jury's interest award was based on any provision other than OCGA § 13-6-13.

indicated that they would either purchase the store and equipment for $57,000 or rescind the transaction and seek a refund of their $20,000 downpayment. Thereafter, the Lims turned the store back over to H & H Subs and brought suit demanding, in particular, refund of the downpayment. Under *Hightower*, this must be construed as a tort action. Furthermore, the Lims sought and were awarded punitive damages, which are not recoverable on a contract claim. *Trust Co. Bank v. C & S Trust Co.*, 260 Ga. 124, 126 (1) (b) (390 SE2d 589) (1990).

The jury's award of prejudgment interest pursuant to OCGA § 13-6-13 was not authorized in this tort action. Accordingly, the trial court erred in granting interest to the Lims under this statute.

4. Finally, H & H Subs argues that the trial court erred in admitting evidence relating to attorney fees and litigation expenses during the punitive damages phase of trial.

The only evidence presented during the second phase of this bifurcated trial related to attorney fees and litigation expenses. We agree that this evidence was not germane to this portion of the trial, which should involve evidence "relevant to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant. . . ." OCGA § 51-12-5.1 (d) (2).

As an initial matter, the Lims argue that H & H Subs waived this enumeration or somehow acquiesced in the trial court's decision to admit attorney fees evidence in the punitive damages phase. We disagree. H & H Subs objected each time the Lims attempted to offer such evidence at trial, apparently taking the position that an award of attorney fees should be made by the trial court upon motion. H & H Subs did not acquiesce in the trial court's decision to admit this evidence.

We also reject the Lims' argument that evidence of litigation expenses and fees falls appropriately within the punitive damages phase. Punitive damages are intended to punish, penalize, or deter a defendant. They are *not* meant to compensate the plaintiff. OCGA § 51-12-5.1 (c).

This Court recently noted the compensatory nature of a litigation expenses and fee award: "Though awards of litigation expenses and attorney fees may often have a somewhat punitive effect on the party against whom they are awarded, to punish or penalize is not their purpose. Rather, in those limited circumstances under which such awards are authorized by law, the purpose is to compensate an injured party, in order that such parties are not further injured by the cost incurred as a result of the necessity of seeking legal redress for their legitimate grievances." *City of Warner Robins v. Holt*, 220 Ga. App. 794, 795 (1) (b) (470 SE2d 238) (1996). In short, litigation expenses and attorney fees are not punitive damages. *F. N. Roberts*

*Pest Control Co. v. McDonald*, 132 Ga. App. 257, 260 (4) (208 SE2d 13) (1974).

Citing *Ballenger Corp. v. Dresco Mechanical Contractors,* 156 Ga. App. 425 (274 SE2d 786) (1980), the Lims argue that litigation expenses are awarded to punish defendants. Unlike *Holt*, however, the *Ballenger* case did not address whether an award of litigation fees and expenses is punitive or compensatory in nature. See *Ballenger Corp.*, supra at 432-433. Consequently, *Ballenger* is not controlling.

The trial court admitted the attorney fees and litigation expenses evidence to help the jury determine the amount of punitive damages appropriate for this case. This evidence, however, necessarily involved compensation, an improper consideration for the punitive damages phase of a trial. It should have been excluded from the second phase of the bifurcated proceeding.

*Judgment reversed. McMurray, P. J., and Johnson, J., concur.*

DECIDED NOVEMBER 22, 1996.

*McArthur & McArthur, John J. McArthur*, for appellants.
*James W. Bradley*, for appellees.