United States Court of Appeals,

Eleventh Circuit.

No. 95-9602.

WESTCHESTER SPECIALTY INSURANCE SERVICES, INC., Westchester Fire Insurance Company, Movants,

Goodyear Tire & Rubber Company, Plaintiff-Appellant,

v.

U.S. FIRE INSURANCE COMPANY, Evanston Insurance Company, et al., Defendants,

Alexander & Alexander, Inc., Alexander & Alexander of New York, Inc., Alexander Howden North America, Inc., Defendants-Appellees.

Aug. 22, 1997.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:89-CV-1782-HTW), Horace T. Ward, Judge.

Before HATCHETT, Chief Judge, ANDERSON, Circuit Judge, and LAY[*], Senior Circuit Judge.

ANDERSON, Circuit Judge:

This diversity case is governed by Georgia law[1] and involves a dispute between an insured and its insurance broker. Appellant Goodyear Tire & Rubber Company appeals the district court's order granting partial summary judgment for the appellees. Goodyear also requests a new trial on the claim which was tried to a jury. We affirm in part, and reverse and remand in part.

I. FACTS

Appellant Goodyear Tire & Rubber Company manufactures and markets tires and other related products. Appellees Alexander & Alexander, Inc., Alexander & Alexander of New York, Inc., and Alexander Howden North America, Inc. (collectively "A&A") are insurance brokerage companies.

Goodyear hired A&A sometime prior to 1980 to assist Goodyear with various insurance matters. A&A provided insurance brokering, technical, and servicing support for Goodyear. The

---

[*]Honorable Donald P. Lay, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

[1]The parties have not argued in this appeal that Georgia law does not apply.

fee arrangement between Goodyear and A&A in 1980 was that A&A would be paid a fee of $108,000, and also a commission income of $240,000.

Goodyear asked A&A to procure products liability insurance coverage for Goodyear for 1980-1984. Prior to 1980, Goodyear had this coverage under a Travelers insurance policy. The Travelers policy included coverage of defense costs for products liability claims.

The parties differ regarding Goodyear's instructions to A&A. Goodyear contends that it told A&A to procure defense costs coverage for products liability claims that would be the same as or better than the Travelers coverage. A&A asserts that Goodyear told it to obtain a replacement policy containing the exact same language and coverage as the Travelers policy.[2]

A&A negotiated with and secured products liability insurance coverage from U.S. Fire Insurance.[3] Goodyear received a copy of the 1980 U.S. Fire policy and the subsequent renewal policies.

Insuring Agreement II of the U.S. Fire policy provides in relevant part:

II. DEFENSE, SUPPLEMENTARY PAYMENTS: With respect to any claim or suit ... insurance for which is not afforded by self-insurance ... the Company shall:

> (a) Defend, at the sole option of the Insured, any suit against the Insured ...
>
> ...
>
> (d) pay all expenses incurred by the Company and reimburse the Insured for all reasonable expenses, ... including expenses necessarily incurred by the Insured ... in the defense of any lawsuits not defended by the Company.

---

[2]Under both the Travelers policy and the replacement policies procured by A&A, Goodyear retained control over its defense of products liability claims because Goodyear wanted to protect the integrity of its products. Notwithstanding this arrangement, Goodyear intended for A&A to obtain insurance coverage which would reimburse Goodyear for its litigation expenses.

[3]Under the U.S. Fire policy, Goodyear had a self-insured retention, or deductible, of $1,500,000 per claim. If Goodyear's payments exceeded $1,500,000, the U.S. Fire policy covered the next $5,000,000 of liability. Excess insurers provided coverage in the event any one claim exceeded $6,500,000.

There is some evidence in the record indicating that Goodyear asked A&A in 1983 whether the U.S. Fire policy covered defense costs and that A&A assured Goodyear that such costs were covered.

2

Insuring Agreement IV of the U.S. Fire policy provides in pertinent part:

IV. LIMITS OF LIABILITY: With respect to any occurrence for which insurance is afforded hereunder, this Policy shall apply only to the amount of damages, defense and supplementary payments in excess of the retained limit [the deductible] and ... the Company's liability is limited as follows:

The total liability of the Company for all damages, defense and supplementary payments as the result of any one occurrence for all injury or damage shall not exceed $5,000,000 each occurrence.

The U.S. Fire policy also contained Endorsement No. 2, which has spawned the present litigation.[4] Endorsement No. 2 provides in relevant part:

Deductible Amount

1. $1,500,000 each occurrence as respects insurance provided by this policy which was also ... provided by [a former Travelers policy]. For the purposes of Insuring Agreement II the provisions of this paragraph shall be deemed self insurance and the Insured shall have the obligation to provide at his own expense adequate defense and investigation of any claim and to accept any reasonable offer of settlement within this Self-Insured Retention and in event of failure of the Insured to comply with this clause without the advance written consent of the Company, no loss, cost or expense shall be payable by the Company.

Goodyear's prior Travelers policy did not contain language like that in Endorsement No. 2.

Goodyear incurred defense costs and liability payments in several large products liability claims which arose during the U.S. Fire policy period. These costs and payments were in excess of Goodyear's $1,500,000 self-insured retention, or deductible. As a result, Goodyear sought, *inter alia,* reimbursement of defense costs from U.S. Fire and from Goodyear's excess insurers. U.S. Fire denied coverage, claiming that its policy provided coverage only for settlement and judgment payments, not for defense costs. In support of this interpretation of its policy, U.S. Fire cited the portion of Endorsement No. 2 which provides that "the Insured shall have the obligation to provide at his own expense adequate defense and investigation of any claim.... " The excess insurers, following form, also denied coverage based on the language in Endorsement No. 2 of the U.S. Fire policy.

---

[4]Endorsement No. 2 went into effect on July 1, 1980, and was included in the renewal policies until July 1, 1984.

3

This litigation ensued. Goodyear sued U.S. Fire and the excess insurers for, *inter alia,* their failure to reimburse Goodyear's defense costs. Goodyear argued that the U.S. Fire policy covers such costs. Goodyear and U.S. Fire settled. The district court denied Goodyear's motion for summary judgment against the excess insurers, and also denied in part the excess insurers' partial motion for summary judgment against Goodyear, explaining that the U.S. Fire policy language is ambiguous regarding defense costs coverage.[5] Goodyear subsequently settled its claims with the excess insurers.

Goodyear's suit also named A&A as a defendant. Goodyear's claim against A&A was a contingent one, the gist of which was as follows: if Goodyear could not recover its full defense costs from the insurance companies, then Goodyear claimed that A&A was liable therefor, because A&A negligently breached its duty to procure proper insurance coverage of defense costs. In addition, Goodyear claimed that A&A negligently failed to communicate to Goodyear an offer of pro rata coverage of defense costs from U.S. Fire.[6] The district court granted summary judgment for A&A on Goodyear's negligent procurement claim, but denied summary judgment for A&A on Goodyear's claim that A&A negligently failed to communicate the U.S. Fire offer to Goodyear. This latter claim was the subject of a jury trial in which the jury rendered a verdict for A&A, finding the following via interrogatories: A&A had no duty to disclose the offer to Goodyear; A&A did not negligently breach a duty to disclose the offer; and A&A's conduct was not the proximate cause of any damages Goodyear sustained.

---

[5]In addition to finding that the U.S. Fire policy language is ambiguous regarding defense costs coverage, the district court also concluded that the extrinsic evidence is ambiguous and does not resolve the ambiguity in the policy language, thus creating a jury question. *See Travelers Ins. Co. v. Blakey,* 255 Ga. 699, 342 S.E.2d 308, 309 (1986) (explaining that ambiguous contracts should be construed by the court unless ambiguity remains after applying rules of construction; if ambiguity remains, the contract's interpretation is a jury question).

[6]During A&A's negotiations with U.S. Fire, U.S. Fire apparently offered to provide Goodyear with partial coverage of defense costs. Goodyear alleged in its claim against A&A that A&A negligently failed to communicate this offer to Goodyear.

4

In this appeal, Goodyear argues that the district court erred by granting summary judgment for A&A on Goodyear's negligent procurement claim. Goodyear also contends that the district court made several erroneous evidentiary rulings in the trial regarding Goodyear's claim that A&A negligently failed to disclose a U.S. Fire offer of coverage. Goodyear asserts that these erroneous rulings warrant a new trial on that claim.

## II. STANDARDS OF REVIEW

We review the grant of summary judgment *de novo,* viewing the evidence and all inferences therefrom in the light most favorable to the non-movant. *Local Union 48 Sheet Metal Workers v. S.L. Pappas & Co., Inc.,* 106 F.3d 970, 974 (11th Cir.1997). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* We review the district court's evidentiary rulings for an abuse of discretion and overturn the district court's evidentiary rulings only if a substantial right of the party alleging error was prejudiced. *Judd v. Rodman,* 105 F.3d 1339, 1341 (11th Cir.1997).

## III. ANALYSIS

A. *The Negligent Procurement Claim*

Under Georgia law, an insurance agent who negligently fails to procure insurance coverage may be liable to the insured. *Atlanta Women's Club, Inc. v. Washburne* ("*Atlanta Women's Club I* "), 207 Ga.App. 3, 427 S.E.2d 18, 20 (1992). However, if the insured had a copy of the insurance policy in its possession and failed to read the policy so as to discover what risks are covered, the insurance agent is not liable because the insured is " "charged with the knowledge of the terms and conditions of the policy.' " *England v. Georgia-Florida Co.,* 198 Ga.App. 704, 402 S.E.2d 783, 785 (1991) (quoting *S & A Corp. v. Berger Co.,* 111 Ga.App. 39, 140 S.E.2d 509, 511 (1965)). *See also Atlanta Women's Club I,* 427 S.E.2d at 20.

An exception to this general rule applies to cases in which the insurance agent acted as an expert in procuring coverage, and the insured relied on the agent's expertise. *Wright Body Works, Inc. v. Columbus Interstate Ins. Agency,* 233 Ga. 268, 210 S.E.2d 801, 803 (1974); *Atlanta Women's*

5

*Club I,* 427 S.E.2d at 20. Under such circumstances, the insurance agent may be liable for negligent procurement even if the insured has a copy of the insurance policy. An insured who relies on an expert insurance agent is not required to "minutely examine" the policy for coverage defects. *Atlanta Women's Club I,* 427 S.E.2d at 20. However, if an examination of the policy by the insured would have made it " "readily apparent' that the coverage requested was not issued," the agent who acted as an expert will escape liability. *Jim Anderson & Co. v. ParTraining Corp.,* 216 Ga.App. 344, 454 S.E.2d 210, 212 (1995) (quoting *Wright Body Works,* 210 S.E.2d at 802). *See also Atlanta Women's Club I,* 427 S.E.2d at 20. In determining whether a defect is readily apparent, the policy should be read as a layman would read it, and not as an insurance expert would read it. *Jim Anderson,* 454 S.E.2d at 212; *Atlanta Women's Club I,* 427 S.E.2d at 20.

The threshold issue is whether A&A was acting as an expert, and if so, whether any defects in the policy were readily apparent. The district court granted summary judgment for A&A on Goodyear's negligent procurement claim. The district court determined that Goodyear's possession of the policy was dispositive because the district court concluded that A&A did not act as expert.[7] The district court indicated that A&A was not exercising expert discretion when it procured the U.S. Fire policy because Goodyear told A&A to obtain specific coverage.

A&A argues that the district court's order should be affirmed because A&A was not acting as an expert. A&A contends that Goodyear merely told A&A to obtain the same coverage and language as the Travelers policy. A&A argues that it was not required to exercise expert discretion because all it had to do was follow Goodyear's explicit instructions.

A&A cites *England v. Georgia-Florida Co.,* 198 Ga.App. 704, 402 S.E.2d 783 (1991), in support of its argument. In *England,* the insured instructed its brokers to obtain a replacement insurance policy providing the " "same coverage' " as its former policy. *Id.* 402 S.E.2d at 785. The Georgia Court of Appeals reasoned that these instructions allowed the brokers to exercise "no

---

[7]Because Goodyear had the policy in its possession, A&A is not liable for negligent procurement if A&A did not act as an expert.

6

discretion as to the types or amounts of coverage that they were to attempt to secure for [the insured]." *Id.* Because there was no "exercise of expert discretion," the court held that the broker was entitled to a directed verdict on the claim for which the insured had possession of the policy. *Id.*

However, in *Atlanta Women's Club I,* the Georgia Court of Appeals held that summary judgment in favor of an insurance broker was improper in a case in which the insured told the broker to obtain the "same amount of coverage" as provided by the insured's prior policy. *Atlanta Women's Club I,* 427 S.E.2d at 19. The prior policy contained an 80 percent co-insurance clause, but also contained an endorsement negating the co-insurance clause. *Id.* The new policy procured by the broker contained the same 80 percent co-insurance clause, but failed to include the endorsement negating the co-insurance clause. *Id.* The Georgia Court of Appeals indicated that there was a genuine issue of material fact as to whether the broker was acting as an expert, and also concluded that there was a genuine issue of material fact as to whether the absence of the endorsement was readily apparent. *Id.* at 20.

*England* and *Atlanta Women's Club I* appear to be in some tension with each other regarding the issue of when an insurance agent acts as an expert. *See Atlanta Women's Club I,* 427 S.E.2d at 21 (Andrews, J., dissenting). However, both opinions indicate that a key question in this type of case is whether the insurance agent performed expert services or exercised expert discretion in procuring the requested coverage. *See id.* at 20; *England,* 402 S.E.2d at 785. *See also Jim Anderson,* 454 S.E.2d at 212 (explaining that an issue of fact exists as to whether the insured "relied on [its agent] to provide expertise or exercise discretion" in procuring coverage). The answer to this question will necessarily vary depending on the unique facts and circumstances of each case.

We conclude that the evidence submitted to the district court in this case indicates that there is a genuine issue of material fact as to whether A&A was acting as an expert. A&A contends that it was told to duplicate exactly the verbiage of the Travelers policy, but the evidence submitted to the district court contains numerous indications that Goodyear may have told A&A to procure

7

coverage that would be the same as or better than the coverage provided by the Travelers policy, without regard to the exact wording used.[8]  If Goodyear in fact instructed A&A to obtain the same (or better) coverage, without regard to the exact words used in the policy, then A&A may have been acting as an expert.[9]  Our review of the summary judgment record persuades us that there is a genuine issue of material fact as to whether Goodyear engaged A&A as an expert to exercise drafting expertise to ensure that the terms and wording needed to achieve Goodyear's coverage goals were properly negotiated and included in the new policy.[10]

 As noted above, even if A&A is an expert, A&A would still prevail if an examination of the policy, which Goodyear had in its possession, would have made it "readily apparent" that the policy was deficient with respect to the requested coverage.  To resolve this issue, we first address whether the policy is ambiguous with respect to whether it covers defense costs.  The district court concluded that the policy was ambiguous.  We agree.

Insuring Agreement II indicates that defense costs would be covered "[w]ith respect to any claim ... insurance for which is not afforded by self-insurance."[11]  However, the indication of coverage in Insuring Agreement II is rendered ambiguous by Endorsement No. 2. Endorsement No. 2, entitled "Deductible Amount," sets out the $1,500,000 self-insurance figure, and also states:

> For the purposes of Insuring Agreement II the provisions of this paragraph shall be deemed self insurance and the Insured shall have the obligation to provide *at his own expense* adequate defense and investigation of any claim....

---

[8]The compensation arrangement between Goodyear and A&A may also be evidence that A&A was engaged in an expert capacity.

[9]If Goodyear told A&A to duplicate the exact wording of the Traveler's policy, then A&A was not exercising expert discretion and would not be liable to Goodyear because Goodyear had a copy of the U.S. Fire policy. *See Atlanta Women's Club I,* 427 S.E.2d at 20 (stating general rule).

[10]A&A alludes to Goodyear's sophistication frequently when arguing that A&A did not act as an expert.  However, the fact that an insured is sophisticated does not mean that the insured cannot hire experts to assist it with particular matters.  The question of whether A&A was acting as an expert should be evaluated in light of all the facts and circumstances.

[11]Although focused on a more tangential matter, the limits of liability, Insuring Agreement IV carries the same implication that defense costs are covered.

(emphasis added). Of course, if *all* of the "provisions of this paragraph," including the provision that the insured shall pay defense costs at its own expense, are "deemed self insurance," then defense costs would not be covered by the insurance companies. Rather, such costs would be part of the self-insurance. This construction is bolstered somewhat by the language of Endorsement No. 2 stating: "For the purposes of Insuring Agreement II." Insuring Agreement II constitutes the definition, in the policy's main body, of those defense costs for which the insurance companies will provide coverage. That definition expressly excludes claims insurance for which is afforded by self-insurance. Thus, if defense costs are deemed self-insured, then they would not be covered by the insurance companies, but rather would be paid "at [the insured's] own expense."

The foregoing argues that defense costs are not covered. On the other hand, there is an even stronger argument that Endorsement No. 2 means that defense costs are not covered only to the extent that they are incurred by Goodyear in defending the portion of the liability for which Goodyear is responsible, i.e., up to $1,500,000. There being strong arguments for both interpretations of the insurance agreement, we agree with the district court that the policy is ambiguous on the issue of whether the policy covers defense costs.

We turn next to whether this deficiency in the policy is "readily apparent." We conclude that the deficiency is not "readily apparent." Goodyear would have had to "minutely examine" the policy to determine that there was a substantial question as to coverage for defense costs. Thus, if on remand the factfinder finds that A&A was an expert and was instructed to procure coverage for defense costs, we hold that the defect in the policy was not "readily apparent." There is no need to submit the "readily apparent" issue to the factfinder.

To summarize, we conclude that there are genuine issues of material fact as to whether A&A acted as an expert. If A&A is an expert, we hold that the defect in the policy was not readily apparent. Accordingly, we reverse the district court's grant of summary judgment for A&A on Goodyear's negligent procurement claim, and we remand the negligent procurement claim for further proceedings.

9

B. *The Evidentiary Rulings*

Goodyear contends that the district court made several erroneous evidentiary rulings which require a new trial on Goodyear's claim that A&A negligently failed to report a U.S. Fire offer of coverage to Goodyear. We conclude that a new trial is not warranted.

Goodyear argues that the district court erred by admitting into evidence the settlement agreements Goodyear entered into with U.S. Fire and the excess insurers. Goodyear asserts that the admission of these agreements violated Rule 408 of the Federal Rules of Evidence. Rule 408 generally bars the introduction of evidence regarding settlements or offers to settle if such evidence is offered to prove the validity or invalidity of a claim or its amount.[12] The purpose of the rule is to encourage parties to settle their disputes. *See* 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 408.02 (2d ed.1997).

In this case, however, the district court did not abuse its discretion by admitting the settlement agreements into evidence. The district court determined that if the jury awarded damages to Goodyear, A&A was entitled to offset an appropriate amount of Goodyear's recovery in the settlements, i.e., that portion attributable to defense costs.[13] Goodyear and A&A disagreed about

---

[12]Rule 408 provides in pertinent part:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.... This rule ... does not require exclusion when the evidence is offered for another purpose....

FED.R.EVID. 408.

[13]Goodyear argues that the district court should not have allowed an offset at all because such an offset is barred by Georgia's collateral source rule. In tort cases, Georgia's collateral source rule prevents the reduction of a party's liability by payments or benefits that the injured party received from collateral sources. *Amalgamated Transit Union Local 1324 v. Roberts,* 263 Ga. 405, 434 S.E.2d 450, 452 (1993). Although this rule sometimes results in a windfall for the injured party, the rationale supporting the rule is that if there is to be a windfall, it is more just that it go to the injured party rather than the tortfeasor. *Id.*

In this case, the district court did not err by ruling that A&A would be entitled to offset any damages by the amount of the settlements that is attributable to defense costs.

the amount of the offset because they disagreed about what portion of the settlements was properly allocable to the defense costs at issue. Because of this factual dispute regarding the terms of the settlements, introduction of the settlement agreements did not violate Rule 408. The settlement agreements were not offered for the impermissible purpose of proving the invalidity of a claim or its amount, but rather for the permissible purpose of resolving a factual dispute about the meaning of the settlement agreements' terms.[14] *See Central Soya Co., Inc. v. Epstein Fisheries, Inc.,* 676 F.2d 939, 944 (7th Cir.1982) (explaining that evidence regarding a settlement may be admissible to demonstrate what the settlement's terms were).

Goodyear also argues that the district court erroneously refused to allow Goodyear to seek an offset against A&A's offset. Goodyear contends that if A&A is allowed to offset any damages by the amount Goodyear received from its settlements with the insurers, then Goodyear should be entitled to an offset of its own in the amount of the attorney fees and expenses Goodyear incurred in obtaining the settlements from the insurers.[15]

The Georgia Court of Appeals addressed this issue in *Atlanta Woman's Club, Inc. v. Washburne* ("*Atlanta Woman's Club II* "), 215 Ga.App. 201, 450 S.E.2d 239 (1994).[16] In that case,

---

> Although this case involves a tort claim, the collateral source rule does not prevent A&A from seeking an offset because Goodyear's recovery from the insurers is not "wholly independent" of the transaction between Goodyear and A&A. *Crowley v. Trust Co.,* 219 Ga.App. 531, 466 S.E.2d 24, 26 (1995). Unlike the typical tort case, the purported lack of insurance coverage was the very injury that Goodyear alleged it suffered as a result of A&A's alleged negligence. Consequently, the insurers' partial payment is not wholly independent of the transaction at issue in this case, and the district court did not err by allowing A&A to try to prove an offset.

[14]Some commentators have noted that a bifurcated trial, with the liability and damages aspects of the case split, may be useful under such circumstances to avoid any possible prejudice. *See* 2 Weinstein at § 408.10[3]. *See also* Fed.R.Civ.P. 42(b).

[15]At trial, Goodyear did not seek to offset the entire amount of the attorney fees and expenses. Instead, it sought only to offset the portion of the fees and expenses that was attributable to the portion of the settlements that represents defense costs.

[16]*Atlanta Woman's Club II* is the appeal following the Georgia Court of Appeals' remand of the case in *Atlanta Women's Club I.* Although the two opinions are captioned differently (one refers to the plaintiff as the Atlanta *Women's* Club, while the other refers to the plaintiff as the Atlanta *Woman's* Club), the opinions stem from the same case. As previously explained, the

the Woman's Club sued its insurance broker for negligent procurement and also sued its insurer. Ultimately, the Woman's Club settled its coverage dispute with its insurer. The Woman's Club then claimed that it was entitled to recover from its broker the attorney fees and expenses it expended in obtaining a settlement from its insurer. *See id.* 450 S.E.2d at 240.

The Georgia Court of Appeals explained that the Woman's Club would be entitled to recover the attorney fees and expenses if the broker's "wrongdoing was a natural and proximate cause of the attorney fees and expenses of litigation the Woman's Club (purportedly) incurred in pressing its claim against [the insurer]." *Id.* at 241. However, the court concluded that although the broker's wrongdoing

> may have given rise to [the insurer's] involvement with the Woman's Club, ... it was not the reason [the insurer] denied the claims.... This decision was [the insurer's] alone and was (apparently) based on terms of a standard contract of insurance and upon facts which existed at the time the premises was destroyed by fire.

*Id.* at 242. The court thus concluded that there was no genuine issue of material fact as to whether the broker's negligence caused the Woman's Club to incur the expenses, and affirmed the trial court's grant of summary judgment for the broker on that issue. *Id.*

Unlike the situation in *Atlanta Woman's Club II,* there is a genuine issue of material fact in this case as to whether A&A's alleged negligence caused Goodyear to incur fees and expenses in reaching settlements with the insurers. Goodyear is claiming that the insurers in this case did not deny coverage of defense costs based on the language of a standard insurance contract; they denied coverage based on the very language which is ambiguous and which Goodyear claims A&A negligently negotiated.

Goodyear should have been permitted to try to prove that A&A's alleged negligence was the cause of the attorney fees and expenses that Goodyear incurred in obtaining the settlements from the insurers (which constituted A&A's offset). Although the district court erred in this regard, a new

_____

Woman's Club had told its broker to obtain the same amount of insurance as was provided under its former policy, but the broker procured a policy which, unlike the former policy, did not contain an endorsement negating the 80 percent co-insurance clause.

12

trial is not warranted. The jury found that A&A was not negligent in failing to communicate the U.S. Fire offer to Goodyear. Thus, the jury never reached the damage issue with respect to which Goodyear's offset was relevant. We do note, however, that if on remand of the negligent procurement claim, the district court determines that A&A should be allowed to try to prove that it is entitled to offset any damages by the portion of Goodyear's settlements with its insurers allocable to defense costs, then Goodyear should be allowed to try to prove that it is entitled to offset against A&A's offset the amount of attorney fees and expenses Goodyear reasonably incurred in obtaining the portion of the settlements attributable to defense costs. In order to obtain such an offset, Goodyear must prove that A&A's alleged negligence caused Goodyear to incur such fees and expenses.

Goodyear makes two additional arguments that are related to damages. First, Goodyear argues that the district court should not have allowed A&A to challenge the reasonableness of the defense costs Goodyear incurred in defending the products liability claims. Second, Goodyear asserts that the district court erred by ruling that the jury could not award prejudgment interest on the unliquidated damages for Goodyear's tort claim. Because both of these assertions of error challenge the calculation of damages rather than the finding of liability, and because the jury found that A&A was not liable on the failure to disclose the offer of coverage claim, it is not necessary in the resolution of this claim for us to address them. However, for reasons of judicial economy, we will nevertheless address these alleged errors because the issues are likely to recur during the remand of Goodyear's negligent procurement claim. *Cf. United States v. Adamson,* 665 F.2d 649, 656 n. 19 (5th Cir. Unit B 1982), *cert. denied,* 464 U.S. 833, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983);[17] *United States v. 320.0 Acres of Land, More or Less,* 605 F.2d 762, 780, 813, 822 (5th Cir.1979).[18]

---

[17]In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all of the post-September 30, 1981 decisions of Unit B of the former Fifth Circuit. *Id.* at 34.

[18]In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

We readily conclude that the district court did not err by allowing A&A to challenge the reasonableness of Goodyear's defense costs. We also conclude that the district court did not err by refusing to allow Goodyear to seek prejudgment interest. Goodyear contends that even though it could not recover prejudgment interest under Georgia's Unliquidated Damages Interest Act (UDIA), O.C.G.A. § 51-12-14 (1982 & Supp.1996),[19] the district court still should have given the jury the discretion to award prejudgment interest under O.C.G.A. § 13-6-13 (1982). This argument is unavailing; § 13-6-13 applies to contract actions, not to tort actions. *See Arthur Pew Constr. Co., Inc. v. Lipscomb,* 965 F.2d 1559, 1573 n. 14 (11th Cir.1992); *Braner v. Southern Trust Ins. Co.,* 255 Ga. 117, 335 S.E.2d 547, 550 (1985); *H & H Subs, Inc. v. Lim,* 223 Ga.App. 656, 478 S.E.2d 632, 635 (1996).[20]

## IV. CONCLUSION

For the foregoing reasons, we reverse the district court's grant of summary judgment for A&A on Goodyear's negligent procurement claim, and we remand this claim for further proceedings. We affirm the jury's verdict for A&A on Goodyear's claim that A&A negligently failed to communicate a U.S. Fire offer of coverage to Goodyear.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

---

[19]Goodyear apparently failed to comply with the procedural requirements of the UDIA.

[20]In *Tower Financial Services, Inc. v. Smith,* 204 Ga.App. 910, 423 S.E.2d 257 (1992), the Georgia Court of Appeals stated that § 13-6-13 applies to both contract and tort actions. *Id.* 423 S.E.2d at 264. However, this aspect of *Tower* is inconsistent with prior precedent regarding § 13-6-13 and with the Georgia Court of Appeals' more recent pronouncement in *H&H Subs, Inc. v. Lim,* 223 Ga.App. 656, 478 S.E.2d 632 (1996).