**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**May 21, 2020**

# In the Court of Appeals of Georgia

A20A0217, A20A0218. ALSTON & BIRD, LLP v. HATCHER MANAGEMENT HOLDINGS, LLC; and vice versa.

COLVIN, Judge.

This is the second appearance of this legal malpractice matter before this Court. In a prior interlocutory appeal, we held that to the extent that defendant Alston & Bird could prove that nonparties such as Maury Hatcher, the former manager of plaintiff Hatcher Management Holdings (HMH), breached a duty proximately causing injury to HMH, the jury would be allowed "to assign 'fault' to" Maury. (Punctuation omitted.) *Alston & Bird LLP v. Hatcher Management Holdings, LLC*, 336 Ga. App. 527, 530 (785 SE2d 541) (2016) ("*Hatcher I*"), quoting *Zaldivar v. Prickett*, 297 Ga. 589, 604 (2) (774 SE2d 688) (2015). After finding Maury 60% at fault, a jury awarded HMH compensatory damages, interest, and attorney fees totaling more than

$2.1 million. On the rationale that the jury had found Alston & Bird only 32% at fault, the trial court reduced HMH's award to $683,522.07.

On appeal in Case No. A20A0217, Alston & Bird argues that the evidence was insufficient on the issue of proximate cause and that the trial court erred when it submitted the issue of prejudgment interest to the jury. On cross-appeal in Case No. A20A0218, HMH argues that the trial court's reduction of HMH's compensatory and attorney fee awards was erroneous and that the court erred in granting Alston & Bird's motion in limine concerning proceedings in prior litigation involving Maury Hatcher. We affirm the jury's verdict, but we reverse and remand with direction as to prejudgment interest, compensatory damages, and attorney fees.

> Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motion for new trial will not be disturbed.

2

(Footnote omitted.) *Quay v. Heritage Financial, Inc.*, 274 Ga. App. 358, 362-363 (4) (617 SE2d 618) (2005).

Thus viewed in favor of the verdict, the record shows that in 2000, Maury Hatcher hired Alston & Bird and its partner, Jack Sawyer, to form and represent HMH, a holding company for the Hatcher family fortune. Sawyer prepared HMH's operating agreement and presented it to family members at a March 2001 organizational meeting. The operating agreement included provisions that any member "shall have the right at any time, for any purpose reasonably related to such [m]ember's [m]embership [i]nterest, to inspect and copy from [the company's] books and documents," and that the manager(s) would be responsible for delivering a yearly "profit and loss statement" and "a balance sheet" representing the "financial condition of the [c]ompany as of the date indicated[,]" as well as quarterly "statement[s] showing the *amounts distributed to each [m]ember during [each] calendar quarter*" of the fiscal year. (Emphasis supplied.) The family members signed the operating agreement even though it did not list the individual members' ownership interests (as was the norm in such agreements), but did allow Maury to see such information (as empowered at Maury's request). Sawyer did not point out these features to the members present at the organizational meeting.

3

For the next seven years, Maury managed HMH and was the only member in regular contact with Sawyer. Starting in 2005, however, Maury began embezzling company funds, eventually paying himself $876,500 in compensation and $218,000 in distributions. In the spring of 2008, other family members, including Maury's brother Jerry, raised concerns about a lack of information about company affairs. In response to these concerns, and at Maury's request, Sawyer issued a May 2008 letter describing Maury's broad authority but not responding to members' requests to see company records.

On June 5, 2008, Maury sent a letter to Jerry asking him to withdraw from HMH. On July 21, Maury sent a second letter to Jerry saying that Sawyer had "indicated" that Jerry was not entitled to information about members' ownership interests and income. At trial, HMH's expert witness testified that this statement was incorrect and that the members' ownership interests should have been disclosed to Jerry.

At a family meeting held on August 2, 2008, Maury's brother Barry asked Maury why members "weren't being allowed to see information" about members' draws or pay, objecting that "we have no way [of] having checks and balances" over Maury's management and "simply take your word for it." When Maury assured Barry

4

that the operations of the company were "reconciled," Barry said that "all the members except you have tunnel vision and cannot know" whether the company's affairs were being conducted equitably and in accordance with "the rules and bylaws." Barry then raised the possibility of calling in his own accountant to ask Maury about the company's affairs, but Maury said that he would "not necessarily" respond to such inquiries. Barry again asked for a listing of the members' "percentage ownership and the amount they draw every year," but Maury again responded that this was "not appropriate."

In the course of and following this exchange, Sawyer confirmed that members could have the information only if there were majority approval for replacing Maury or full disclosure, or if the other members "went to [c]ourt" and obtained a ruling to "compel Maury to turn that information over[.]" Sawyer also suggested that "full disclosure" would cost the family "$25,000 a year." As we have noted, however, the operating agreement required the manager to provide members with "a statement showing the amounts distributed to each [m]ember . . . for each previous calendar quarter during the fiscal year." Sawyer testified at trial that he did not recall this provision and its reporting requirements when he advised the members as he did, and that he did not refer to the agreement or its terms at the August 8 meeting,

5

In the weeks following the meeting, Maury discussed redeeming his and his immediate family's interest in HMH with Sawyer at least three times, and also told Sawyer that he planned to move to Florida. On October 31, Maury redeemed his family's interests, paying himself $397,000 more than they were worth. Neither Sawyer nor Maury disclosed the redemption to the rest of the members before Maury announced his resignation on January 2, 2009, soon after which he moved to Florida and bought a house. At trial, Barry testified that if he and other family members "[had] known [at the time of the August 2008 meeting] that we were entitled to [HMH's] records . . . , we would have seen that Maury had been stealing money from the company" and "could have filed suit against Maury to have the funds recovered[.]" Sawyer admitted at trial that HMH could have used Maury's membership interest to repay much of what had been stolen.

On January 16, 2009, the members fired Maury as manager and appointed Jerry and Barry in his stead. On February 2, and despite a warning from a junior attorney about an actual conflict of interest, Alston & Bird sent Jerry and Barry a cease-and-desist letter demanding that they stop interfering with HMH's interests. In early February, as they worked on a second cease-and-desist letter, the junior attorney again warned Sawyer of the conflict between the firm's representation of Maury and

6

that of the company under new management. On February 27, Maury and Sawyer presented Jerry and Barry with a universal release from any claims or litigation, to be signed in exchange for the return of HMH's records. Jerry refused to sign the release, however.

In August 2009, HMH hired an accountant, Mark Zyla, to examine the company's records. Although Maury refused to provide what appeared to be missing documents, Zyla determined that Maury had misappropriated approximately $1.492 million from the company by means including improper distributions, improper compensation, and overvaluation of his interest in HMH at the time of redemption. Zyla also calculated the interest due on this sum, from Maury's October 2008 redemption to trial, at $971,044. In December 2009, HMH sued Maury, eventually receiving a judgment of over $4 million, which HMH has not been able to collect.

In May 2012, HMH filed this action against Alston & Bird for legal malpractice and breach of fiduciary duty. The law firm moved for summary judgment on grounds including that HMH's damages were not proximately caused by the firm. After a hearing, the trial court denied the motion. The law firm's motion for a directed verdict was taken under advisement. At trial, HMH introduced evidence in support of a jury award (including compensatory damages, interest, and litigation expenses,

7

but not including punitive damages) of over $2.5 million. The jury found Alston & Bird liable for both legal malpractice and breach of fiduciary duty and awarded compensatory damages of $697,614, prejudgment interest of $341,831, and attorney fees and costs of $1,096,561.48, for a total award of $2,136,006.48.[1] The jury also apportioned fault for Alston & Bird at 32%, HMH at 8%, and non-party Maury at 60%. The trial court then reduced the verdict by 68% and entered judgment accordingly. After a remand from this Court, the trial court denied Alston & Bird's motion for judgment notwithstanding the verdict in a detailed order. This appeal followed.

### Case No. A20A0217

1. Alston & Bird does not dispute that Sawyer and the firm owed HMH one or more duties and that they breached those duties. On appeal, and without distinguishing between the legal malpractice and breach-of-duty claims, the firm claims that because the evidence was insufficient to show that any breach of duty was the proximate cause of HMH's injury, the trial court erred in denying its motion for judgment not withstanding the verdict. We disagree.

To make out a claim for legal malpractice,

---

[1] The jury declined to award punitive damages.

a plaintiff has the burden of proving the three elements of such an action: (1) employment of the defendant attorney (i.e., the plaintiff had an attorney-client relationship with the attorney); (2) failure of the attorney to exercise ordinary care, skill, and diligence; and (3) that the attorney's negligence was the proximate cause of the plaintiff's damages.

(Footnote omitted.) *Estate of Nixon v. Barber*, 340 Ga. App. 103, 105 (1) (796 SE2d 489) (2017). More specifically, and to establish proximate cause in an action for legal malpractice or breach of fiduciary duty,

a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant [a directed verdict] for the defendant.

(Citation omitted.) *Whiteside v. Decker, Hallman, Barber & Briggs*, 310 Ga. App. 16, 18-19 (1) (712 SE2d 87) (2011). But "[t]he mere fact that the plaintiff's injuries would not have been sustained had only one of the acts of negligence occurred will not of itself operate to limit the other act as constituting the proximate cause."

9

(Footnote omitted.) *Glisson v. Freeman*, 243 Ga. App. 92, 108 (532 SE2d 442) (2000).

Here, a jury was authorized to conclude from the evidence outlined above that as a result of Sawyer's incorrect advice in response to direct inquiries, family members left the August 2008 meeting under the mistaken belief that they were not entitled to information on members' interests, and that as a result, they were deprived of the opportunity to take action to remedy Maury's fraud. The jury was also authorized to infer that when Sawyer did not disclose Maury's redemption or moving plans to the members and when he drafted letters demanding that Jerry and Barry stop interfering with Maury (even after repeated warnings from a junior attorney), Sawyer violated his duties of care and loyalty to HMH. Further, and although Alston & Bird points to evidence that Maury's thefts occurred before the August 2008 family meeting, Sawyer himself testified that had members learned of Maury's theft before the *redemption*, the company could have used his remaining membership interest to repay a portion of what had been stolen. We also note, moreover, that the jury's award of compensatory damages was well within the range of the evidence.

For all these reasons, the trial court did not err when it denied Alston & Bird's motion for directed verdict and for judgment notwithstanding the verdict. See *Both*

10

*v. Frantz*, 278 Ga. App. 556, 559 (2) (629 SE2d 427) (2006) (reversing a grant of summary judgment on plaintiffs' claim for breach of fiduciary duty when their legal malpractice claim was "still an issue" and when the attorneys might have had the duty to "avoid conflicts of interest after the termination of an attorney-client relationship") (footnotes omitted); *Traub v. Washington*, 264 Ga. App. 541, 543-544 (1) (591 SE2d 382) (2003) (affirming denial of summary judgment on a claim for legal malpractice when expert testimony supported a conclusion that the attorney had ignored a conflict, resulting in damage to the client); *Glisson*, 243 Ga. App. at 108 (5) (reversing a grant of summary judgment when a jury could find that a fiduciary's misrepresentations were the proximate cause of an improper transfer of plaintiff's funds). Compare *Whiteside*, 310 Ga. App. at 19 (where the only evidence on proximate cause came from the expert on legal malpractice, the client had not established that element of the claim).

2. Alston & Bird also asserts that the trial court erred when it instructed the jury that it could award prejudgment interest in this tort action. We agree.

The record shows that when HMH sought an instruction on prejudgment interest, Alston & Bird objected that because HMH's damages were unliquidated, "prejudgment interest does not apply. . . . It is not for the jury to consider." The trial

11

court overruled the objection, and later charged the jury that it could award prejudgment interest at the annual rate of 7 percent "from the time of the breach until the time of the recovery."

HMH sought damages under OCGA § 13-6-13, which provides: "In all cases where an amount ascertained would be the damages at the time of the breach [of contract], it may be increased by the addition of legal interest from that time until the recovery." Although HMH points to law authorizing the recovery of prejudgment interest in tort cases,[2] such a recovery is authorized only when the tort action involves a breach of a duty "'aris[ing] from a contractual right.'" *Miller v. Lynch*, 351 Ga. App. 361, 370-371 (4) (830 SE2d 749) (2019), quoting *Tower Financial Svcs., Inc. v. Smith*, 204 Ga. App. 910, 916 (2), 918 (4) (423 SE2d 257) (1992). The Supreme Court authority cited by this Court in *Tower* limited itself, moreover, to the question "whether it is error, *in a breach of contract case* where the damages are unliquidated, for the court to instruct the jury that it may return a verdict stating interest separately, rather than including it as part of the damages awarded." (Emphasis supplied.) *Braner*

---

[2] See, for example, the dicta in *Sims v. Heath*, 258 Ga. App. 681, 683 (3) n.6 (577 SE2d 789) (2002), disapproved on other grounds, *Rockdale Hosp. v. Evans*, 306 Ga. 847, 853 (2) n. 4(834 SE2d 77) (2019); and in *Tower*, infra at 918 (4) (authorizing prejudgment interest as to the tort of wrongful foreclosure arising from plaintiff's security deed).

12

*v. Southern Trust Ins. Co.*, 255 Ga. 117, 119 (1) (335 SE2d 547) (1985). And this Court has recently held that an action for breach of fiduciary duty (such as loyalty or care) that does not arise from any specific contract does not authorize an award of prejudgment interest under OCGA § 13-6-13. *Miller*, 351 Ga. App. at 370-371 (4). See also *H & H Subs v. Lim*, 223 Ga. App. 656, 659-660 (3) (478 SE2d 632) (1996) (reversing an award of prejudgment interest under OCGA § 13-6-13 when plaintiffs had elected to sue defendant in tort rather than in contract and when they had sought punitive damages, "which are not recoverable on a contract claim").

HMH did not include a breach of contract claim in its suit, and neither side has pointed to any specific contract in the record which might ground a claim for prejudgment interest under OCGA § 13-6-13. Because there is no evidence before us of a specific contract from which the duties in this case might have arisen, and because HMH's suit sounded in tort, including a claim for punitive damages, we must conclude that the trial court erred when it authorized the recovery of prejudgment interest here. *H & H Subs*, 223 Ga. App. at 659-660 (3).[3]

_____

[3] This Court's decision in *Hamilton v. Powell, Goldstein, Frazer & Murphy*, 167 Ga. App. 411 (306 SE2d 340) (1983), cited by HMH, does not compel a different result. There, we held that a claim for legal malpractice was a "cause of action in tort," such that the plaintiff had "two years to bring an action for tort, and four years to bring an action for breach of contract." (Citations omitted.) Id. at 414 (1). As we

Case No. A20A0218

3. HMH first argues that the trial court erred in reducing the jury's award by the percentage of the fault of Maury as well as HMH.[4] We agree.

OCGA § 51-12-33 provides in relevant part:

(a) Where an action is brought against *one or more* persons for injury to person or property and *the plaintiff is to some degree responsible* for the injury or damages claimed, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall determine the percentage of fault of the plaintiff and *the judge shall reduce the amount of damages otherwise awarded to the plaintiff in proportion to his or her percentage of fault.*

(b) Where an action is brought against *more than one* person for injury to person or property, the trier of fact, in its determination of the total amount of *damages* to be awarded, if any, shall after a reduction of *damages* pursuant to subsection (a) of this Code section, if any,

---

noted, moreover, "if the breach complained of is not mere neglect of a duty expressly provided for by the terms of the contract itself, the complaining party may elect as to his remedy, and rely either upon his right under the contract or proceed for damages as for a tort." (Citation and punctuation omitted.) Id. at 413 (1). Here, of course, HMH elected to proceed in tort.

[4] The charge instructed the jury that "[i]f you believe that the plaintiff is entitled to recover and further find that the plaintiff is to some degree responsible for the injury or damages claimed, you should not make any reduction because of the negligence, if any, of the plaintiff[.]" HMH concedes that the trial court should have reduced the compensatory award by 8%.

14

apportion its award of *damages* among the persons who are liable according to the percentage of *fault* of each person. Damages apportioned by the trier of fact as provided in this Code section shall be the liability of each person against whom they are awarded, shall not be a joint liability among the persons liable, and shall not be subject to any right of contribution.

(c) In assessing percentages of *fault*, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit.

. . .

(f)(1) *Assessments of percentages of fault of nonparties shall be used only in the determination of the percentage of fault of named parties.*

(2) Where fault is assessed against nonparties pursuant to this Code section, findings of fault shall not subject any nonparty to liability in any action or be introduced as evidence of liability in any action.

(g) Notwithstanding the provisions of this Code section or any other provisions of law which might be construed to the contrary, the plaintiff shall not be entitled to receive any damages if the plaintiff is 50 percent or more responsible for the injury or damages claimed.

(Emphasis supplied.)[5]

"When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant." (Citation and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013). We therefore "read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." (Citation and punctuation omitted.) *FDIC v. Loudermilk*, 295 Ga. 579, 588 (2) (761 SE2d 332) (2014). "The common and customary usages of the words are important, but so is their context." (Citations omitted.) *Chan v. Ellis*, 296 Ga. 838, 839 (1) (770 SE2d 851) (2015). "For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law – constitutional, statutory, and common law alike – that forms the legal background of the statutory provision in question." (Citations omitted.) *May v. State*, 295 Ga. 388, 391-392 (761 SE2d 38) (2014).

---

[5] Present subsection (a) was added in 2005. 2005 Ga. L. Act 1 (S.B. 3), § 12 (effective February 16, 2005). Before the 2005 amendment, the statute addressed only the class of actions now covered by subsection (b) – that is, actions "brought against more than one person for injury to person or property" in which "the plaintiff is himself to some degree responsible[.]" Former OCGA § 51-12-33 (a) (1987); 1987 Ga. L. p. 915, § 8.

As a preliminary matter, we note that the current action was brought against only one party, Alston & Bird, and concluded with a determination by the jury that the plaintiff HMH was 8% at fault for its own injury. On its face, then, OCGA § 51-12-33 (a) is the applicable portion of the statute. Id. (applying to actions against "*one or more* persons for injury to person or property *and the plaintiff is to some degree responsible* for the injury or damages claimed") (emphasis supplied); see also *Zaldivar*, 297 Ga. at 593 ("Subsection (a) specifies exactly what is to be done with the 'fault' of the plaintiff"). Compare OCGA § 51-12-33 (b) (applying to actions brought against "*more than one* person for injury to person or property") (emphasis supplied).

As we noted in our previous opinion, moreover, the apportionment statute obligates us to distinguish between the trier of fact's determination of damages and that of fault. *Hatcher I*, 336 Ga. App. at 528 ("apportioning fault, not damages, [was] the issue" in that interlocutory appeal). Subsection (a) states that the trial court "shall reduce the amount of *damages* otherwise awarded to the plaintiff in proportion to his or her percentage of fault." (Emphasis supplied.) OCGA § 51-12-33 (a). As we construed a former version of the statute and reversed a trial court's ruling that a jury could apportion damages concerning a non-party, we made clear that "OCGA § 51-

17

12-33[] does not authorize a jury to apportion damages against a nonparty." (Footnote omitted). *Fraker v. C. W. Matthews Contracting Co.*, 272 Ga. App. 807, 810 (1) (614 SE2d 94) (2005). See also *Schriever v. Maddox*, 259 Ga. App. 558, 561 (2) (c) (578 SE2d 210) (2003) (because a defendant was no longer a party, "an instruction on apportionment with him would have been inappropriate" under a former version of OCGA § 51-12-33). By contrast, we emphasized in *Hatcher I* that "fault" would determine the identity of those included in Alston & Bird's notice of nonparty fault. *Hatcher I*, 336 Ga. App. at 538, 530 (the trial court erred in striking Alston & Bird's notice of nonparty fault).[6]

Here, the jury awarded compensatory *damages* in the amount of $697,614. Because this is an action involving only one defendant, and because the jury found that HMH was 8% responsible for the injuries it suffered, the trial court should have reduced this award of compensatory damages by 8% rather than 68%. OCGA § 51-12-33 (a).

4. HMH also argues that the trial court erred in reducing the attorney fee and costs portion of the award. Again, we agree.

---

[6] As our Supreme Court has explained, "The assignment of 'fault' is the mechanism by which the 'liability' of a named defendant is measured, but 'fault' does not literally mean 'liability.'" *Zaldivar*, 297 Ga. at 600 (1) n.7.

18

Where fault is indivisible, the apportionment statute is inapplicable. *FDIC v. Loudermilk*, 305 Ga. 558, 572 (826 SE2d 116) (2019). An award of litigation fees under OCGA § 13-6-11 also "stand[s] alone" and apart from an award of compensatory damages. *Williams v. Harris*, 207 Ga. 576, 578 (3) (63 SE2d 386) (1951) (affirming a jury's award of attorney fees when it found that a defendant had acted in bad faith). Specifically, "obtaining some but less than all of the relief sought is sufficient to authorize an award of attorney fees." *Magnetic Resonance Plus, Inc. v. Imaging Systems Intern.*, 273 Ga. 525, 528 (3) (543 SE2d 32) (2001). Our Supreme Court's *Magnetic Resonance* opinion also noted with approval this Court's "careful and accurate analysis" concluding that "'where there is actual bad faith or stubborn litigiousness in the evidence, attorney fees are authorized under [OCGA § 13-6-11], *regardless of the amount of the recovery*.'" (Emphasis supplied.) Id. at 528 (3), quoting *Georgia-Carolina Brick & Tile Co. v. Brown*, 153 Ga. App. 747, 754 (2) (266 SE2d 531) (1980). This is so because "[t]he presence or absence of bad faith on the part of a defendant lies solely in the evidence of his conduct in dealings with the plaintiff out of which the suit arose[,] and not in the plaintiff's ability to prove up his damages[.]" (Citation and punctuation omitted; emphasis supplied.) *Georgia-Carolina Brick*, 153 Ga. App. at 750 (2) (B).

19

HMH included a claim for attorney fees and costs under OCGA § 13-6-11 in its complaint and submitted evidence at trial supporting the inference that Alston & Bird's bad faith had caused it to spend $1,096,561.48 in such fees and costs. Alston & Bird has not challenged the sufficiency of HMH's evidence in this regard. The jury found that Alston & Bird had committed both legal malpractice and breached its fiduciary duty; as such, HMH was the "prevailing party" on these claims and was entitled to seek its attorney fees under OCGA § 13-6-11. The jury also found that Alston & Bird had "acted in bad faith" and awarded HMH fees and costs in the full amount the company had requested – $1,096,561.48. Given that the court's 68% reduction in the award resulted in a final judgment of $683,522.07 – less than the jury's award of fees and costs alone – it is clear that the trial court included the fee award as part of "all damages awarded by the jury." As HMH points out, moreover, there is nothing in the jury's verdict to indicate that there was any allocation of bad faith to anyone other than Alston & Bird.

Because HMH was the prevailing party on its claims, and because "where there is actual bad faith or stubborn litigiousness in the evidence, attorney fees are authorized under OCGA § 13-6-11, regardless of the amount of recovery," the trial court erred when it reduced this jury's fee award. *Georgia-Carolina Brick & Tile*, 153

Ga. App. at 754 (2) (B) (affirming an award of fees under OCGA § 13-6-11 even when plaintiffs had failed to prove all their compensatory damages).

5. HMH represents that in the event that we reverse the trial court on the issues of apportionment and fees, it does not seek a retrial on its assertion that the trial court erred in granting Alston & Bird's motion in limine concerning the firm's arguably improper withholding of documents. We therefore do not reach this issue.

In sum, we affirm the submission of HMH's substantive claims to the jury, but we reverse the trial court's submission of prejudgment interest to the jury, its reduction of the jury's compensatory award by 68% rather than 8%, and its reduction of any portion of HMH's litigation costs. On remand, the trial court is directed to enter a new judgment in accordance with this opinion.

*Judgment affirmed in part and reversed in part in Case No. A20A0217, judgment affirmed in part and reversed in part in Case No. A20A0218, and cases remanded with direction. Miller, P. J., and Reese, P. J., concur.*